[No. 41085-1-II.    Division Two.    May 8, 2012.]

ARTHUR S. WEST, *Appellant*, v. THURSTON COUNTY, *Respondent*.

*Arthur S. West*, pro se.

*Duncan K. Fobes* and *Mark A. Anderson* (of *Patterson Buchanan Fobes Leitch & Kalzer*), for respondent.

¶1 HUNT, J. — Arthur S. West appeals the superior court's memorandum opinion ruling that certain attorney fee invoices of Thurston County's insurer-appointed defense counsel did not meet the Public Records Act's (PRA)[1] definition of "public records" because the County never physically received the invoices, was not responsible for paying them, and did not consider the invoices as part of any decision-making process. West also argues that the superior court erred in (1) failing to rule that the County improperly redacted parts of other invoices, (2) failing to impose a higher PRA penalty amount on the County, (3) unreasonably delaying the issuance of its memorandum

---

[1] Ch. 42.56 RCW.

opinion, (4) failing to rule on allegedly newly discovered evidence that the County supposedly suppressed, (5) awarding attorney fees and costs to West's former counsel instead of to West himself, and (6) granting West's former counsel's motion for an attorney fees lien. We affirm.

## FACTS

### I. BACKGROUND

¶2 Thurston County contracts with the Washington Counties Risk Pool for self-insurance coverage. The Risk Pool "is a public agency created by interlocal agreement in 1988, to provide coverage for liability exposures of counties."[2] The County has a $250,000 deductible under the Risk Pool agreement. The Risk Pool has the contractual right to appoint defense counsel to represent the County in matters that the self-insurance agreement covers. The Risk Pool-appointed defense counsel sends attorney fee invoices to the Risk Pool for payment, which the Risk Pool satisfies; if the County has not yet reached its $250,000 deductible, then the Risk Pool forwards these invoices to the County with requests for reimbursement. After the County meets its deductible, however, the Risk Pool no longer sends invoices to the County, which, at that point, is not responsible for paying them.

### A. *Broyles*[3] Litigation

¶3 In 2001, several former prosecutors sued the County for discrimination (the *Broyles* litigation). The County's contract with the Risk Pool covered the County's potential liability. The Risk Pool appointed at least five law firms to represent the County.[4] In 2006, the *Broyles* plaintiffs re-

---

[2] *Who We Are*, WASH. COUNTIES RISK POOL, http://www.wcrp.info/about.html (last visited Mar. 23, 2012).

[3] *Broyles v. Thurston County*, 147 Wn. App. 409, 195 P.3d 985 (2008).

[4] The five firms were (1) Cable, Langenback, Kinerk & Bauer LLP; (2) Garvey, Schubert & Barer; (3) Law Offices of John Francis Kennedy; (4) Lee Smart Cook

ceived large jury verdicts and awards for attorney fees and costs, which our court later upheld on appeal.[5]

¶4 Between October 2001 and November 2002, five Risk Pool-appointed firms billed the Risk Pool for approximately $280,000 in services. Between November 2002 and December 2006, four of the original five Risk Pool-appointed firms,[6] plus other (apparently Risk Pool-appointed) law firms and service providers, billed almost $1.9 million. Because the County was ultimately responsible for satisfying these invoices up to the deductible amount, the Risk Pool paid the first $250,000 and forwarded copies of the invoices to the County with requests for reimbursements. After the cumulative amount of invoices exceeded $250,000, the Risk Pool ceased forwarding copies of the invoices to the County because it was no longer responsible for paying them.

## B. Public Records Act Request

¶5 On December 17, 2006, a local newspaper reported that Michael Patterson, one of the County's *Broyles* attorneys, "wo[uld]n't tell the public how much [the County's] legal defense [in the *Broyles* litigation] ha[d] cost." Clerk's Papers (CP) at 116. About five weeks later, on January 22, 2007, Arthur S. West filed a Public Records Act (PRA)[7]

---

Martin and Patterson; and (5) Bullard Smith Jernstedt Harnish. After June 2007, a new firm, Patterson Buchanan Fobes Leitch & Kalzer Inc. PS, began representing the County. According to the Washington Secretary of State's corporation registry, Lee Smart Cook Martin and Patterson is now known as Lee Smart PS Inc. *See Corporations Division Registration Data Search*, WASH. SECRETARY OF ST. http://www.sos.wa.gov/corps/search_detail.aspx?ubi=600108057 (last visited Mar. 23, 2012).

By June 2007, Michael Patterson, who played a central role in the facts underlying this appeal, was no longer an attorney at the firm of Lee Smart Cook Martin and Patterson. After June 2007, Patterson was with the firm of Patterson Buchanan Fobes Leitch & Kalzer.

[5] *See Broyles*, 147 Wn. App. at 453.

[6] Bullard Smith Jernstedt Harnish no longer represented the County after November 2002.

[7] Ch. 42.56 RCW.

request with the Thurston County Public Records Officer, which stated:

> Please consider this a formal request under the Washington State Public Records Act (PRA) for copies of the complete records and official public records concerning the attorney billings related to the defense of the Thurston County Prosecutor's [O]ffice in Mason County Superior Court, and any records mentioned in any records request by the Olympian or any other entity presently being withheld from disclosure.
>
> Specifically, this refers to the records of billings from the firm of Lee, Smart, Cook, Martin and Patterson. The law firm should "get Smart" and make full disclosure of the public records at issue in order to forestall a loss of public confidence in their integrity.

CP at 163.

¶6 In a letter dated January 26, Patterson, still representing the County, denied West's PRA request.[8] Patterson's letter cited specific exemptions, including RCW 42.56.290, which exempts

> [r]ecords that are relevant to a controversy to which an agency is a party but which records would not be available to another party under the rules of pretrial discovery for causes pending in the superior courts.

Patterson also cited RCW 42.56.070(1), which exempts documents that "fall[ ] within the specific exemptions of . . . other statute[s] which exempt[ ] or prohibit[ ] disclosure of specific information or records." For the "other statute," Patterson relied on RCW 5.60.060(2)(a), which reads,

> An attorney . . . shall not, without the consent of his or her client, be examined as to any communication made by the client to him or her, or his or her advice given thereon in the course of professional employment.

---

[8] Two days earlier, on January 24, the *Broyles* trial court had denied the *Broyles* plaintiffs' motion to compel production of the Risk Pool-appointed defense counsel's invoices.

II. PROCEDURE

¶7 On February 12, 2007, West filed a PRA action against the County in Mason County Superior Court. On February 24, Patterson wrote another letter to West, maintaining that RCW 42.56.290 exempted defense counsel's invoices from disclosure. Patterson also wrote that, nevertheless, the County would provide "redacted copies" of the invoices the County had in its "possession." CP at 165.

A. First Disclosure (February 24, 2007); First Appeal

¶8 On the same day that Patterson wrote his February 24 letter to West, the County turned over to West 243 pages of redacted documents, comprising 46 individual invoices from five Risk Pool-appointed firms, even though West's PRA request had asked only for "records of billings from the firm of Lee, Smart, Cook, Martin and Patterson." CP at 163. These invoices' dates ranged from October 1, 2001, through November 22, 2002. The invoices

> were redacted to remove the name, address and other contact information of the person or entity to whom the invoice was sent, the file number and description of the matter, all descriptions of work performed and all descriptions of costs or disbursements as well as personal or financial information such as tax identification numbers.

CP at 182. The cumulative total of these invoice amounts was $255,030.95.[9] The County also provided to West a four-page document listing the Risk Pool's individual payments to law firms (including, but not limited to, four of the original five Risk Pool-appointed firms) and other service

---

[9] As discussed below, the County sought to provide West with invoices from only the first $250,000.00 in cumulative billing (the County's deductible amount). But the final invoice in the February 2007 disclosure was for $46,137.60, which raised the cumulative amount from $208,158.02 to $255,030.95, over the deductible amount. Thus, in its February 2007 disclosure, the County technically provided West with the invoices from the first $255,030.95 in cumulative billing.

providers between November 2002 and December 2006, which amounted to nearly $1.9 million.

¶9 On March 26, the superior court dismissed West's PRA action, apparently because the County had disclosed the requested invoices; West appealed.[10] On May 13, 2008, we unanimously concluded in a published opinion that the superior court had erred by dismissing West's PRA action. *West v. Thurston County*, 144 Wn. App. 573, 584, 183 P.3d 346 (2008). We reasoned,

> RCW 42.56.904 was expressly intended to clarify the Public Records Act's applicability to records of public funds expended on private legal counsel. The new statute clarified that attorney invoices held by a public agency may not be withheld in their entirety and that any work product redactions must be justified.

*West*, 144 Wn. App. at 584. We remanded with instructions for the superior court to determine (1) "whether the County has, in fact, disclosed all of the invoices in its possession"; (2) "whether [the County's] redactions are justified as work product or privileged information"; and (3) "the costs and penalties to be assessed against the County for resisting disclosure until West filed this lawsuit." *West*, 144 Wn. App. at 584.

---

[10] On May 8, while West's appeal was pending, the legislature enacted RCW 42.56.904, which provides:

> It is the intent of the legislature to clarify that no reasonable construction of chapter 42.56 RCW [the PRA] has ever *allowed attorney invoices to be withheld in their entirety by any public entity* in a request for documents under that chapter. It is further the intent of the legislature that specific descriptions of work performed be redacted only if they would reveal an attorney's mental impressions, actual legal advice, theories, or opinions, or are otherwise exempt under chapter 391, Laws of 2007 or other laws, with the burden upon the public entity to justify each redaction and narrowly construe any exception to full disclosure. The legislature intends to clarify that the public's interest in open, accountable government includes an accounting of any expenditure of public resources, *including through liability insurance,* upon private legal counsel or private consultants.

LAWS OF 2007, ch. 391, § 1 (emphasis added). RCW 42.56.904 became effective on July 22, 2007.

## B. Second Disclosure (July 9, 2008); Remand from First Appeal

¶10 On July 9, 2008, apparently in response to our court's decision, the County disclosed 303 pages of documents to West. This 303-page disclosure comprised numerous individual invoices, two of which the County had not included in its previous February 24, 2007 disclosure.[11] The July 2008 invoices were in "significantly less redacted form" than their February 2007 counterparts. CP at 166. But, like the February 2007 disclosure, the July 2008 disclosure did not include invoices substantially exceeding the $250,000 deductible.[12] Nor did the July 2008 disclosure include the Risk Pool's four-page payment history for the $1.9 million in costs incurred between November 2002 and December 2006.

¶11 On August 11, 2008, approximately one month after the County provided West with this second disclosure, we mandated *West* back to the superior court. On September 8, West moved the superior court to order the County to "show cause . . . why [the County] should not be compelled to comply in all respects with" our decision in *West*. CP at 740. On October 17, the County sent the superior court two sets of documents: (1) "[u]nredacted copies of all *Broyles v. Thurston County* attorney fee invoices provided to [West] on February 24, 2007"; and (2) "[u]nredacted copies of all *Broyles v. Thurston County* attorney fee invoices provided to [West] on July 9, 2008." CP at 726.

---

[11] The February 2007 disclosure had comprised only 243 pages because the February 2007 invoices did not include checks and memoranda included later in the July 2008 version of these invoices. This July 2008 version of these invoices included copies of the Risk Pool's checks and/or memoranda from law firms requesting payment. *See* CP at 208-90.

[12] The July 2008 disclosure comprised invoices up to $276,998.12 in cumulative billing, compared with $255,030.95 in the February 2007 disclosure, because the July 2008 disclosure included two additional invoices in the amounts of $21,935.00 and $32.17, respectively.

¶12 On January 6, 2009, counsel entered appearance for West. The superior court held the show cause hearing on February 6. West argued that the County had violated the PRA by failing to disclose Risk Pool-appointed defense counsel invoices in excess of the County's $250,000 deductible.[13] He contended that the PRA required the County to disclose invoices for amounts exceeding its $250,000 deductible because these invoices satisfied the PRA's statutory definition of a "public record," even though the Risk Pool had not forwarded copies of these invoices to the County and the County was not responsible for paying them. Verbatim Report of Proceedings (VRP) (Feb. 6, 2009) at 9.

¶13 West asked the superior court to "issue an order requiring Thurston County to produce immediately the invoices above $250,000.00, subject to appropriate redactions for attorney-client privilege and work product that should be isolated and only to information that this action would be privileged." VRP (Feb. 6, 2009) at 15. After the County responded to West's arguments, the superior court advised the parties that it would review both sets of documents and "issue a memorandum decision." VRP (Feb. 6, 2009) at 52.

## C. Third Disclosure (October 15, 2009); December 24, 2009 Findings

¶14 After about 10 months, the County had not disclosed the invoices for amounts exceeding the deductible and the superior court still had not issued its memorandum opinion.[14] On October 6, 2009, West moved "for an order requir-

---

[13] This opinion refers to Risk Pool-appointed attorney invoices exceeding the County's $250,000 deductible as "post-deductible invoices." Technically, the post-deductible invoices at issue here include the invoices exceeding $276,998.12, not $250,000; the County disclosed the first $276,998.12 worth of invoices in its July 9, 2008 disclosure.

[14] The superior court's delay resulted in part from our Supreme Court's June 12, 2009 order recalling the mandate of its January 15, 2009 decision in *Yousoufian v.*

ing Thurston County to immediately produce the invoices for attorneys' fee services in excess of $250,000." CP at 592. The next day, the County wrote a letter to West advising him that it was "providing the requested documents over objection." CP at 577. The letter continued:

> We do not agree with [West's] assertion that Thurston County had an obligation to produce invoices in excess of $250,000. First, as was already addressed at the hearing on February 6, 2009, [West's] arguments based on his interpretation of the words "owned" and "used" [within the PRA's statutory definition of a "public record," former RCW 4.45.010(2) (2007)] are flawed and without merit. Second, the invoices in excess of $250,000 were not in the possession of Thurston County, but were in the possession of the Risk Pool, a separate governmental entity. Third, to a significant extent, the requested invoices are not in the possession of this law firm either. You are probably aware that this law firm, Patterson Buchanan Fobes Leitch & Kalzer, is a relatively new firm. We began doing business in June 2007. Any invoices related to the Broyles case that existed prior to June 2007 are not in the possession of this firm.
>
> Rather than continue to argue about these matters, we are agreeing, first, to provide you with all invoices that this law firm does possess, i.e., those generated after June 2007. We are reviewing them for privilege and will send them as soon as that review is complete. Second, to the extent that invoices were generated by a different law firm prior to June 2007, those invoices should be in the possession of the Risk Pool. Earlier today we spoke with a representative of the Risk Pool and asked that, as a courtesy, they provide us with copies of the invoices in their possession. The Risk Pool has agreed. Once we receive those invoices we will immediately forward them to you.

CP at 577-78.

---

*Office of Ron Sims*, a landmark PRA case. *See* Order, No. 80081-2 (Wash. June 12, 2009). On August 21, 2009, the superior court asked the parties to provide briefing on the effect of our Supreme Court's mandate recall. CP at 602. Our Supreme Court did not issue its new *Yousoufian* decision until March 25, 2010. *Yousoufian v. Office of Ron Sims, King County Exec.*, 168 Wn.2d 444, 229 P.3d 735 (2010).

¶15 One week later, on October 14, the County sent West an e-mail, stating:

This email is to let you know that our firm [Patterson Buchanan Fobes Leitch & Kalzer] has obtained copies of all invoices in the possession of the Risk Pool related to the Broyles case in excess of the $250,000 deductible. I have also located all invoices in the possession of this firm for work on the Broyles case in excess of the $250,000 deductible. I am having the documents sent out to a vendor for copying and should have them back within 24 hours. I expect that I should have all of them to you sometime Friday.

CP at 580.

¶16 In a letter dated October 16, filed with the superior court on November 12, West wrote to the superior court:

[A]s of yesterday, October 15, 2009, Thurston County produced what was represented as all invoices for the *Broyles v. Thurston County* matter for legal fees exceeding $250,000. Although the production included a complete banker's box of documents, from a preliminary review of the materials, it appears to be complete without redactions. Because this was the specific relief requested by [West's October 6, 2009] motion [for an order requiring the County to produce the invoices in excess of $250,000] Mr. West is striking that motion.

CP at 571. On November 30, West filed a "brief to outline the issues remaining for determination by [the superior court] in this matter and to recalculate the requested penalties based on Thurston County's October 15, 2009 production of invoices for legal fees over $250,000 and the time that has passed since the last hearing." CP at 554.

### D. December 24, 2009 Findings; April 6, 2010 Memorandum Opinion

¶17 On December 21, the superior court conducted a telephonic hearing and advised the parties that it (1) had compared the redacted version of the County's February 2007 disclosure with the unredacted version of the Febru-

ary 2007 disclosure; (2) had compared the redacted version of the February 2007 disclosure with the redacted version of the July 2008 disclosure; (3) had compared the redacted version of the July 2008 disclosure with the unredacted version of the July 2008 disclosure; and (4) had compared the redacted version of the July 2008 disclosure and the unredacted version of the July 2008 disclosure with "the privilege log[15] that had been supplied." VRP (Dec. 21, 2009) at 56. The superior court also told the parties it had created a "chart" containing 86 pages of findings "with respect to the comparisons" and advised it had "wanted to be able to provide to [the parties] this chart for any comments that [the parties] may have before [the superior court] actually issue[s its] decision based upon essentially what will be [the superior court's] findings, which are from that chart." VRP (Dec. 21, 2009) at 56-57.

¶18 Three days later, in an 8-page letter dated December 24, the superior court explained the results of its document comparisons, which process it described as "both tedious and exacting." CP at 206. The superior court attached a 90-page spreadsheet containing highly detailed descriptions of each document. The superior court's most important findings were that the July 2008 disclosure contained two invoices that the February 2007 disclosure did not contain and that the July 2008 contained 60 more pages and fewer redactions than the February 2007 disclosure.

¶19 On January 6, 2010, the superior court conducted a telephonic status conference, the purpose of which, it advised the parties, was to "see what the next steps might be, and also to see whether there were any significant questions with regard to the information provided [in the superior court's December 24, 2009 letter and spreadsheet]." VRP (Jan. 6, 2010) at 60. West's counsel told the

---

[15] This "the privilege log" appears to have been the County's exemption claim under RCW 42.56.210(3), which provides: "Agency responses refusing, in whole or in part, inspection of any public record shall include a statement of the specific exemption authorizing the withholding of the record (or part) and a brief explanation of how the exemption applies to the record withheld."

superior court, "Well, no, Your Honor. There aren't really any issues that [West] ha[s] to bring up." VRP (Jan. 6, 2010) at 60. The County took the same position. The superior court responded that it would "proceed to finalize [its] opinion." VRP (Jan. 6, 2010) at 62.

¶20 Three months later, on April 6, the superior court issued a memorandum opinion:

> Because Thurston County did not possess, prepare, own, use, or retain invoices for defense services in *Broyles* over their $250,000 deductible, these invoices were not within the [PRA's] definition of a "public record" under RCW 42.56.010. Thurston County did not have an obligation to produce or arrange for the production of defense invoices over their $250,000 deduct[i]ble. No violation of the [PRA] is found regarding Thurston County's failure to produce or arrange for the production of defense invoices in *Broyles* over their $250,000 deduct[i]ble.

CP at 181. The superior court concluded that, "by July 9, 2008, Thurston County had produced for Mr. West[ ] copies of all invoices in its possession regarding the defense of the *Broyles* case." CP at 178. The superior court also ruled that (1) the County's redactions from its February 2007 disclosure were not justified, (2) the County's redactions from its July 2008 disclosure "were justified,"[16] and (3) the delay between the date when West made his PRA request, January 22, 2007, and when the County disclosed all responsive records, July 9, 2008, was 534 days. The superior court imposed on the County a $30 per day penalty, for a total of $16,020. The superior court also awarded West attorney fees and costs.

### E. First Motion for Reconsideration; Second and Third Appeal Notices

¶21 On April 16, 2010, West moved the superior court to reconsider (1) its ruling that the post-deductible invoices

---

[16] CP at 184.

were not public records; (2) its daily penalty amount, which West believed was too low; and (3) "grouping the wrongfully withheld records" (West did not elaborate on this request). CP at 69. On April 30, West asked the superior court to award him $2,281.86 in costs and $24,073.00 in attorney fees. On May 10, the County filed a response, stating that it did not object to either amount.

¶22 On July 28, the superior court denied West's motion for reconsideration. The next day, in a letter dated July 29, but filed on July 30, the superior court advised the parties that they should forward an agreed order to the superior court for an award of $24,073.00 in attorney fees and $2,281.86 in costs.

¶23 On August 4, West, now acting pro se, filed a notice of appeal of the superior court's "final order of . . . August 2, 2010."[17] CP at 43. On August 9, West filed a "notice of breach of contract, motion to terminate and appearance pro se" that described his counsel's withdrawal as "a unilateral breach of the duties of counsel." CP at 42. On August 10, West's counsel filed a notice of withdrawal. The notice of withdrawal was dated August 4 and was "effective immediately." CP at 41. This notice did not explain the reason for the withdrawal. On August 13, West's former counsel filed an amended notice of withdrawal explaining, "Based on prior communications with Mr. West, there was not an anticipated objection to withdrawal." CP at 40. The amended notice of withdrawal stated that the withdrawal would be effective as of August 31, 2010.

¶24 On August 26, West filed an amended notice of appeal from (1) "the final order of the Court of July 28, 2010," which denied West's motion for reconsideration of the superior court's April 6 memorandum opinion; (2) the superior court's April 6 memorandum opinion itself; and (3)

---

[17] The record does not contain a copy of an order from the superior court dated August 2, 2010. We note, however, that when West filed an amended notice of appeal on August 26, he changed the date of the "final order of the Court" from August 2, 2010, to July 28, 2010. CP at 31.

"the final judgment set for presentation Sept. 6, 2010." CP at 31.

### F. Superior Court's September 20, 2010 Judgment and West's Second Reconsideration Motion

¶25 On September 20, the superior court issued an order stating, "The Court holds that Thurston County violated the Public Records Act and is required to pay [West] a penalty amount of $16,020.00." CP at 944. That same day, the superior court issued a judgment awarding West $16,020.00 in PRA penalties, $24,073.00 in attorney fees, and $2,281.86 in costs. The superior court ordered the County to pay attorney fees and costs to West's former counsel, who had by then withdrawn from representing West.

¶26 On September 28, West filed a second motion to reconsider. CP at 974. He argued that the superior court should "reconsider and amend" its September 20 order "in light of newly discovered evidence which indicates that counsel suppressed disclosure of Broyles['] related records in the possession of Thurston County." CP at 974. In addition, West asked the superior court to "vacate the relief granted to [West's former counsel] pursuant to [the former counsel's] secret negotiations with opposing counsel . . . to disregard [West's] interests in return for an immediate and possibly excessive attorney fee award." CP at 974-75. Also on September 28, West's former counsel filed a notice of attorney's fees lien "on the judgment entered or to be entered in the . . . action for services rendered to Arthur West" for $24,073.00 in attorney fees and $1,752.84 in litigation expenses. CP at 937.

¶27 On October 25, the superior court conducted a telephonic conference. The County's counsel[18] appeared telephonically, but West did not appear; the superior court's

---

[18] As of October 7, 2010, Patterson, of Patterson Buchanan Fobes Leitch & Kalzer, withdrew from representing the County, and Duncan Fobes, from the same firm, substituted for Patterson.

attempts to reach West by telephone were unsuccessful. The superior court denied West's second motion to reconsider.

### G. Third Notice of Appeal; Third Motion for Reconsideration

¶28 On November 24, West filed a "final notice of appeal" from the superior court's September 20, 2010 judgment, from "[a]ll interlocutory and supplementary orders," and from "[t]he order on reconsideration of November 22."[19] CP at 860. On November 29, West filed a third motion for the superior court to reconsider, requesting the same relief as he had sought in his second motion for reconsideration.[20]

¶29 On December 13, because of a fee dispute between West and his former counsel, the superior court ordered the County to pay the PRA penalty amounts and the attorney fees and costs award into the Mason County Superior Court registry. On December 21, West signed a document acknowledging his receipt of a check from the Mason County Clerk for $16,020.00, the amount the superior had ordered the County to pay in PRA fines. On January 24, 2011, the superior court ordered the Mason County Clerk to disburse $26,354.86 to West's former counsel.

¶30 We now address the issue that West raises in his third notice of appeal.

## ANALYSIS

¶31 West's primary argument involves an issue of first impression: whether the definition of a Thurston County "public record" under the PRA includes attorney fee invoices for amounts greater than the County's $250,000 deductible, which invoices the County's Risk Pool-appointed

---

[19] The record does not contain any "order on reconsideration of November 22." CP at 860.

[20] Apparently, the superior court did not rule on this third reconsideration motion.

defense attorneys prepared and never provided to the County (because these invoices properly were submitted to and paid by the County's Risk Pool). We hold that it does not.

## I. INVOICES EXCEEDING COUNTY'S DEDUCTIBLE NOT PUBLIC RECORDS

¶32 Following West's previous appeal, in 2008, we instructed the superior court to decide on remand "whether the County has, in fact, disclosed all of the invoices in its possession." *West*, 144 Wn. App. at 584. On remand, the superior court ruled that invoices exceeding the County's $250,000 deductible were not "public record[s]" under the PRA and the County had no obligation to disclose them. CP at 181. West argues that this ruling was erroneous because the invoices that exceeded the County's deductible were public records and the PRA required the County to disclose them. This argument fails.

## A. Standard of Review

¶33 We review de novo a public agency's decision to withhold records. *Lindeman v. Kelso Sch. Dist. No. 458*, 162 Wn.2d 196, 201, 172 P.3d 329 (2007). In reviewing a PRA request, we stand in the same position as the superior court. *Lindeman*, 162 Wn.2d at 200. Where the record consists of only affidavits, memoranda of law, and other documentary evidence, the superior court's factual findings on disputed issues do not bind us. *DeLong v. Parmelee*, 157 Wn. App. 119, 143, 236 P.3d 936 (2010).[21] "In construing the PRA, we [must] look at the Act in its entirety in order to enforce the law's overall purpose." *Rental Hous. Ass'n of Puget Sound v. City of Des Moines*, 165 Wn.2d 525, 536, 199 P.3d 393 (2009). "The PRA must be 'liberally construed and its exemptions narrowly construed' to ensure that the

---

[21] *Remanded on other grounds by* 171 Wn.2d 1004 (2011).

public's interest is protected." *City of Federal Way v. Koenig*, 167 Wn.2d 341, 344, 217 P.3d 1172 (2009) (quoting RCW 42.56.030).

### B. Invoices Exceeding Deductible Do Not Meet "Public Records" Definition

¶34 "The PRA is a 'strongly worded mandate for broad disclosure of public records.'" *Yakima County v. Yakima Herald-Republic*, 170 Wn.2d 775, 791, 246 P.3d 768 (2011) (internal quotation marks omitted) (quoting *Soter v. Cowles Publ'g Co.*, 162 Wn.2d 716, 731, 174 P.3d 60 (2007)). "The purpose of the PRA is to 'ensure the sovereignty of the people and the accountability of the governmental agencies that serve them' by providing full access to information concerning the conduct of government." *Kitsap County Prosecuting Attorney's Guild v. Kitsap County*, 156 Wn. App. 110, 118, 231 P.3d 219 (2010) (quoting *Amren v. City of Kalama*, 131 Wn.2d 25, 31, 929 P.2d 389 (1997)). An agency must respond within five business days of receiving a public records request. RCW 42.56.520. Under the PRA, all state and local agencies must disclose public records upon request unless the records fall under a statutory exemption. RCW 42.56.520, .550(1); *Wood v. Lowe*, 102 Wn. App. 872, 876, 10 P.3d 494 (2000). If the agency fails to do so, then the requester may move for an order to show cause why the public agency refused disclosure. RCW 42.56.550(1).

¶35 The PRA requires the agency to respond to a PRA request within five business days, however, only if the request seeks "public records." The PRA defines "public records" as

> any writing containing information relating to the conduct of government or the performance of any governmental or propri-etary function [(1)] prepared, [(2)] owned, [(3)] used, or [(4)] retained by any state or local agency regardless of physical form or characteristics.

Former RCW 42.56.010(2) (2007). Again, whether a public agency's insurer-appointed defense counsel's invoices (which

the public agency never physically received and which the public agency was not responsible to pay) are "public records" under the PRA is an issue of first impression. We consider this issue by analyzing the four ways that an agency's "writing[s]" may satisfy the PRA's definition of "public records."

## 1. "Prepared"

¶36 An agency's "writing" is a public record if the agency "prepare[s]" it. Former RCW 42.56.010(2). West's theory is that the County's Risk Pool-appointed counsel were agents of the County and, therefore, the County (acting through its agents) "prepared" the post-deductible invoices. Br. of Appellant at 26. We disagree.

¶37 We recognize that the attorney-client relationship is generally a type of principal-agent relationship. *See Fite v. Lee*, 11 Wn. App. 21, 28, 521 P.2d 964 (1974); *see also Haller v. Wallis*, 89 Wn.2d 539, 547, 573 P.2d 1302 (1978). But West cites no Washington authority[22] extending this principal-agency relationship to the PRA context or establishing that records prepared by agents of a public agency automatically become "public records" subject to disclosure under the PRA. On the contrary, we assume that the legislature " 'means exactly what it says' ";[23] and, in this instance, our state's legislature has not yet chosen to extend the PRA this far, expressly designating "agencies" as the only entities that can prepare "public records" subject to disclosure under the PRA. Applying the maxim *expressio unius est exclusion alterius*, " 'to express one thing in a

---

[22] West relies on foreign case law holding otherwise, including *State ex rel. Findlay Publishing Co. v. Hancock County Board of Commissioners*, 80 Ohio St. 3d 134, 1997-Ohio-353, 684 N.E.2d 1222. But other states' decisions are not binding on us. *State v. Lord*, 161 Wn.2d 276, 289, 165 P.3d 1251 (2007). Nor do we find these cases persuasive.

[23] *Morgan v. Johnson*, 137 Wn.2d 887, 892, 976 P.2d 619 (1999) (quoting *State v. McCraw*, 127 Wn.2d 281, 288, 898 P.2d 838 (1995) (internal quotation marks omitted)).

statute implies the exclusion of the other,' "[24] we assume that the legislature intended to exclude from this designation an agency's insurer-appointed lawyers who prepare documents that the agency never physically possesses. Accordingly, we hold that a "writing" prepared by an agency's insurer-appointed lawyers is not automatically a public record under former RCW 42.56.010(2) if the agency never physically possessed the documents.[25]

## 2. "Owned"

¶38 The County urges us to adopt the superior court's reasoning, which relied on Division One's decision in *O'Neill v. City of Shoreline*, 145 Wn. App. 913, 925, 187 P.3d 822 (2008)[26] defining "to own" as " ' " '[t]o have or possess as property.' " ' " Br. of Resp't at 22 (quoting CP at 179 (quoting *O'Neill*, 145 Wn. App. at 925 (quoting THE AMERICAN HERITAGE DICTIONARY 1294 (3d ed. 1992)))). Applying this *O'Neill* definition of "owned," the superior court ruled:

> [I]t is clear that Thurston County did not own the invoices for defense services over their $250,000 deductible. It has not been disputed that Thurston County did not receive these billings, did not pay these billings, nor did Thurston County have responsibility to reimburse the Washington Counties Risk Pool for any payments made toward these billings.

CP at 179. Agreeing with the superior court's adoption of the *O'Neill* court's definition of "to own" as "[t]o have or possess as property," we hold that the County did not "own" the invoices that exceeded its deductible. CP at 179.

---

[24] *Adams v. King County*, 164 Wn.2d 640, 650, 192 P.3d 891 (2008) (quoting *In re Det. of Williams*, 147 Wn.2d 476, 491, 55 P.3d 597 (2002)).

[25] We note that only the legislature can amend or expand its definition of a "public record." It is not for the courts to do so because "[w]e cannot make laws. We can only apply the laws which the legislature makes to the facts in a particular case." *Fix v. Fix*, 33 Wn.2d 229, 231, 204 P.2d 1066 (1949).

[26] *Rev'd in part on other grounds*, 170 Wn.2d 138, 240 P.3d 1149 (2010).

### 3. "Used"

¶39 Next, the County argues that "the [superior] court . . . properly determined that the County had not 'used' the invoices over the deductible." Br. of Resp't at 25. The superior court discussed *Concerned Ratepayers Ass'n v. Public Utility District No. 1 of Clark County*, 138 Wn.2d 950, 960, 983 P.2d 635 (1999), which held that an agency " 'use[s]' " a public record if the record contains information that the agency either "(1) employ[s] for; (2) applie[s] to; *or* (3) ma[k]e[s] instrumental to a governmental end or purpose." Our Supreme Court clarified that "governmental end or purpose" does not necessarily mean "an agency's final work product." *Concerned Ratepayers*, 138 Wn.2d at 960. Instead, according to our Supreme Court:

> [T]he critical inquiry is whether the requested information bears a nexus with the agency's decision-making process. A nexus between the information at issue and an agency's decision-making process exists where the information relates not only to the conduct or performance of the agency or its proprietary function, but is also a relevant factor in the agency's action. That is, certain data may still be relevant and an important consideration in an agency's decision-making process even if it is not a part of the agency's final work product. Thus, mere reference to a document that has no relevance to an agency's conduct or performance may not constitute "use," but information that is reviewed, evaluated, or referred to and has an impact on an agency's decision-making process would be within the parameters of the [PRA].

*Concerned Ratepayers*, 138 Wn.2d at 960-61 (emphasis added) (citations omitted).

¶40 Applying *Concerned Ratepayers* here, the superior ruled:

> Thurston County did not receive invoices for defense services over their $250,000 deduct[i]ble. Additionally, there is no evidence that Thurston County reviewed, evaluated, referred to or

otherwise considered defense invoices over their $250,000 deduct[i]ble in their decision-making process regarding their defense in *Broyles* or for any other purpose. There is no showing that the defense invoices for services over Thurston County's $250,000 deduct[i]ble had a nexus with Thurston County's decision-making process.

CP at 180-81. In our view, the superior court properly applied *Concerned Ratepayers* in its "use[ ]" analysis. Accordingly, we hold that the County did not "use" the invoices that exceeded its deductible. Former RCW 42.56.010(2).

### 4. "Retained"

¶41 West does not argue that the County "retained" the requested records. Based on the dictionary definition of "retain"—"to hold or continue to hold in possession or use"[27] —we conclude that the County did not "retain" invoices that exceeded its $250,000 deductible. Because we have already held that the County neither possessed nor used such invoices, we further hold that the County did not retain, namely, "continue to hold in possession or use," such excess invoices. WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1938 (2002).

### II. JULY 9, 2008 DISCLOSURE EXEMPTIONS

¶42 West also asserts that the superior court erred in "allowing and approving Thurston County's assertion of over 300 new (postappeal) exemptions" to the County's July 9, 2008 disclosure.[28] Br. of Appellant at 7. But West does not identify the exemptions in the record to which he refers; nor does he provide any legal argument to support the alleged impropriety of these exemptions. Similarly, in his reply brief, West baldly claims that he "obviously could

---

[27] WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1938 (2002).

[28] This was the second of three issues that we instructed the superior court to resolve on remand. *West*, 144 Wn. App. at 584.

not, within the limitations of an opening brief, deal separately with each one of over 300 exemptions." Reply Br. of Appellant at 5-6. Nevertheless, West does not even attempt to "deal" with or to discuss *any* of the 300 exemptions, not even as discrete examples. Reply Br. of Appellant at 5.

¶43 Such "[p]assing treatment of an issue or lack of reasoned argument is insufficient to merit judicial consideration." *Holland v. City of Tacoma*, 90 Wn. App. 533, 538, 954 P.2d 290 (1998). We do not consider conclusory arguments that do not cite authority. *See* RAP 10.3(a)(6), 10.4; *State v. Marintorres*, 93 Wn. App. 442, 452, 969 P.2d 501 (1999). In making bald assertions lacking cited factual and legal support, West has failed to present developed argument for our consideration on appeal; accordingly, we do not address his exemptions challenge.

### III. PRA Penalty

¶44 West next contends that the superior court set the PRA penalty too low in light of what he characterizes as the County's "manifest bad faith." Br. of Appellant at 38. This argument fails.

¶45 We review the superior court's determination of daily penalties for abuse of discretion. *Yousoufian v. Office of Ron Sims, King County Exec.*, 168 Wn.2d 444, 458, 229 P.3d 735 (2010). The superior court abused its discretion if its decision was manifestly unreasonable or based on untenable grounds or reasons. *Yousoufian*, 168 Wn.2d at 458. The superior court's decision was manifestly unreasonable if the court, " 'despite applying the correct legal standard to the supported facts, adopts a view that no reasonable person would take.' " *Yousoufian*, 168 Wn.2d at 458 (internal quotation marks omitted) (quoting *Mayer v. Sto Indus., Inc.*, 156 Wn.2d 677, 684, 132 P.3d 115 (2006)). Such is not the case here.

¶46 RCW 42.56.550(4) provides:

Any person who prevails against an agency in any action in the courts seeking the right to inspect or copy any public record or

the right to receive a response to a public record request within a reasonable amount of time shall be awarded all costs, including reasonable attorney fees, incurred in connection with such legal action. In addition, it shall be within *the discretion of the court* to award such person an amount not to exceed one hundred dollars for each day that he or she was denied the right to inspect or copy said public record.[29]

¶47 A PRA penalty determination involves a two-step inquiry: (1) determining the appropriate daily penalty amount; and (2) calculating the number of days the public agency denied the party access to the records. *See Yousoufian*, 168 Wn.2d at 459. We address each in turn.

### A. Daily Penalty Amount (*"Yousoufian* Factors")

¶48 The superior court imposed a daily penalty amount of $30. West argues that the superior court "erred and committed an abuse of discretion in failing to properly weigh the *Yousoufian* factors [in] its penalty determination," asserting that the daily amount should be higher. Br. of Appellant at 37. This argument fails.

¶49 The *Yousoufian* court announced three categories of factors: (1) "principal" factors, (2) "mitigating" factors, and (3) "aggravating" factors. *Yousoufian*, 168 Wn.2d at 460-63, 467. These factors

may overlap, are offered only as guidance, may not apply equally or at all in every case, and are not an exclusive list of appropriate considerations. Additionally, no one factor should control. These factors should not infringe upon the considerable discretion of trial courts to determine PRA penalties.

*Yousoufian*, 168 Wn.2d at 468.

### 1. "Principal" factors

¶50 In *Yousoufian* our Supreme Court established four principal factors for determining an appropriate daily pen-

---

[29] Before July 22, 2011, courts had to impose a minimum penalty of $5. Laws of 2011, ch. 273, § 1. Courts are now free to impose a daily penalty amount from $0 to $100.

alty: (1) the existence or absence of a public agency's bad faith; (2) the economic loss to the party requesting the documents; (3) the public importance of the underlying issues to which the request relates, and whether "the significance of the issue to which the request is related was foreseeable to the agency"; and (4) the degree to which the penalty is an "adequate incentive to induce further compliance." *Yousoufian*, 168 Wn.2d at 460-63. Here, the superior court applied these principal factors and found that (1) the "issue of disclosure of private attorney fees billings had significant public importance" but that "the foreseeability of the importance of this issue by Thurston County has not been demonstrated"; (2) West "did not allege any actual personal economic loss with respect to the alleged PRA violation"; and (3) "there is no misconduct to deter" because the County "relied in good faith upon and [sic] existing exemption," "the law subsequently was clarified by the legislature," and "the action taken by the legislature to clarify this area of the law should be sufficient to instruct this agency and other agencies on the subject of disclosure of attorney fee billings." CP at 194-95. West does not challenge any of these specific principal factors; instead, he limits his arguments to disputing the "mitigating" and "aggravating" factors, which we next address.

## 2. "Mitigating" factors

¶51 Mitigating factors that may serve to decrease the penalty include (1) a lack of clarity in the PRA request; (2) the public agency's prompt response or legitimate follow-up inquiry for clarification; (3) the agency's good faith, honest, timely, and strict compliance with all PRA procedural requirements and exceptions; (4) proper training and supervision of the agency's personnel; (5) the reasonableness of any explanation for noncompliance by the agency; (6) the helpfulness of the agency to the requester; and (7) the existence of agency systems to track and receive public records. *Yousoufian*, 168 Wn.2d at 467.

¶52 Applying these mitigating factors here, the superior court found that (1) West's PRA request lacked clarity and the County responded in a "broad manner"[30]; (2) the County timely responded to West's PRA request within four days, even though this initial response wrongly denied West's request; (3) the County "consistently demonstrated good faith in its approach to Mr. West's PRA request"; (4) the County was "honest in their response to Mr. West's PRA request"; (5) the County demonstrated adequate "training and supervision of the [County's] personnel with respect to PRA requests" because the County "assigned the responsibility to respond to Mr. West's PRA request to a licensed, practicing attorney who had specific knowledge of the issues presented in the *Broyles* case"; (6) the County's January 26, 2007 initial denial of West's request was "very reasonable" because (a) the County issued the denial "only after a ruling by the trial judge in the *Broyles* case denying the request by the *Broyles* plaintiffs for the same records," and (b) the County's denial turned out to be erroneous only after "the legislature clarified its intent with respect to this area of the law"; and (7) the County was reasonably helpful in answering West's PRA request. CP at 189-93.

¶53 West contends that the superior court "f[ound] mitigating factors to be present when such findings were not supported in the record." Br. of Appellant at 37. But again, West provides no citations to the record in support of his argument; nor does he even specify with which mitigating factors he disagrees. Again, we do not consider West's bald assertions. *See Holland*, 90 Wn. App. at 538; *see also* RAP 10.3(a)(6), 10.4; *Marintorres*, 93 Wn. App. at 452. Moreover, we hold that the record adequately supports the superior court's findings and that the superior court, in applying the mitigating factors, did not " 'adopt[ ] a view that no reason-

---

[30] The County responded broadly because West's January 22, 2007 PRA request sought invoices from the Risk Pool-appointed firm Lee Smart Cook Martin and Patterson. But on February 24, 2007, the County disclosed redacted invoices for amounts below the deductible from all five Risk Pool-appointed firms.

able person would take.'" *Yousoufian*, 168 Wn.2d at 459 (internal quotation marks omitted) (quoting *Mayer*, 156 Wn.2d at 684).

### 3. "Aggravating" factors

¶54 Aggravating factors that may support increasing the penalty include (1) a delayed response by the agency, especially in circumstances making time of the essence; (2) lack of strict compliance by the agency with all the PRA procedural requirements and exceptions; (3) lack of proper training and supervision of the agency's personnel; (4) unreasonableness of any explanation for noncompliance by the agency; (5) negligent, reckless, wanton, bad faith, or intentional noncompliance with the PRA by the agency; (6) agency dishonesty; (7) the public importance of the issue to which the request is related, where the importance was foreseeable to the agency; (8) any actual personal economic loss to the requester resulting from the agency's misconduct, where the loss was foreseeable to the agency; and (9) a penalty amount necessary to deter future misconduct by the agency, considering the size of the agency and the facts of the case. *Yousoufian*, 168 Wn.2d at 467-68. Applying these aggravating factors here, the superior court found only one: the 534-day delay between the time West made his PRA request and the time when the County properly disclosed unredacted copies of the law firms' invoices for amounts below its deductible amount.

¶55 Contending that the superior court "fail[ed] to find that all of the aggravating factors were present,"[31] West asserts that the superior court failed to find the following factors: (1) "[T]he information withheld was of foreseeable public importance"; (2) "the agency misrepresented the content of the record and demonstrated manifest bad faith and concealment of records"; (3) West was "greatly inconvenienced"; (4) "the potential for public harm in [t]he form of

---

[31] Br. of Appellant at 37.

a loss of government accountability"; (5) the "unreasonableness of asserting an exemption that did not exist in law"; (6) "the County's multiple instances of silent concealment and withholding"; (7) "the County's duplicity and evasion of the law"; and (8) the "scorched earth tactics employed by the County to unduly complicate and delay the case and place unreasonable burdens upon the plaintiff and the Court." Br. of Appellant at 37-39. Again, West makes these assertions without citation to the record or to legal authority, contrary to the requirements of RAP 10.3(a)(6). Thus, we do not further consider this argument.

¶56 We hold, however, that the superior court did not " 'adopt[ ] a view that no reasonable person would take' " by finding only one aggravating circumstance. *Yousoufian*, 168 Wn.2d at 458 (internal quotation marks omitted) (quoting *Mayer*, 156 Wn.2d at 684). The County's delay in disclosing invoices for law firms' billings both below and above its deductible amount was due in large part to difficult and unresolved legal issues concerning the PRA, not bad faith. Accordingly, we do not disturb the superior court's aggravating factors findings.

## B. Number of Days the County Denied Requested Records

¶57 Because the law firms' invoices exceeding the County's deductible were not public records under the PRA, the County had disclosed all required public records by July 9, 2008. The superior court imposed a $30 per day penalty between January 22, 2007 and July 9, 2008, for a total of 534 days. Thus, the superior court correctly calculated the number of days that the County had improperly denied West access to public records to which he was entitled and had thereby subjected itself to penalties. Accordingly, we affirm both the amount of the daily penalty and the number of days to which the penalty applies.

## IV. "Newly Discovered" Records

¶58 West further argues that the superior court erred in "failing to rule" on "newly discovered records" that

the County allegedly "deliberately suppressed." Br. of Appellant at 31, 34. He contends that these "newly discovered records" are (1) "[a] January 23, 2007 communication discussing responses to plaintiff West and the [Building Industry Association of Washington]"; and (2) "[a]n email message of December 30, 2008." Br. of Appellant at 31-32. As the County correctly notes, (1) these documents are not responsive to West's PRA request because they are not invoices from the *Broyles* litigation; and (2) in the alternative, the documents did not exist as of the date of West's PRA request, January 22, 2007. *Smith v. Okanogan County,* 100 Wn. App. 7, 13-14, 994 P.2d 857 (2000) (holding that the PRA does not require agencies to disclose a record that does not exist at the time of the request). Thus, West's "newly discovered records" argument fails.

## V. "Delay"

¶59 West assigns error to the superior court's "fail[ure] to . . . *promptly* follow the Order of Remand," criticizing the superior court's taking "over two years" after our remand.[32] Br. of Appellant at 18 (emphasis added). This argument does not warrant a remedy.

¶60 RCW 2.08.240 and article IV, section 20 of our constitution require the superior courts to decide cases "within ninety days from the submission thereof." But "[t]he mere fact that the judgment was not rendered within 90 days does not of itself constitute error upon which the judgment may be reversed." *Moylan v. Moylan,* 49 Wash. 341, 344, 95 P. 271 (1908). Here, the superior court's protracted processing of the case was not error. The parties filed numerous briefs and motions throughout the 21-month period between our mandate's issuance and the superior court's decision, requiring the superior court to

---

[32] West's assertion is inaccurate to the extent that the superior court issued its decision on April 6, 2010, 21 months after our court's August 11, 2008 mandate, not "more than two years." CP at 741.

rule on additional ancillary matters before it could reach the three ultimate issues on remand.[33] In light of the amount of litigation involved in this case and the complexity of the underlying issues, we hold that the superior court did not improperly delay its resolution of this case on remand.[34]

## VI. West's Former Counsel's Attorney Fees and Costs

¶61 West argues that "the Court erred in its Order awarding costs and fees when it made an award to [West's] former counsel." Br. of Appellant at 43. West contends that the superior court should have awarded RCW 42.56.550(4) attorney fees to *him*, rather than to his former counsel. This argument fails.

¶62 First, West provides no case law supporting his contention that superior courts should award PRA attorney fees and costs to a pro se litigant; nor is there any such case law available of which we are aware. Instead, West simply cites the PRA's attorney fee provision, which reads:

> Any person who prevails against an agency in any action in the courts seeking the right to inspect or copy any public record or the right to receive a response to a public record request within a reasonable amount of time shall be awarded all costs, *including reasonable attorney fees*, incurred in connection with such legal action. In addition, it shall be within the discretion of the court to award such person an amount not to exceed one hundred dollars for each day that he or she was denied the right to inspect or copy said public record.

RCW 42.56.550(4) (emphasis added). West contends that this statutory provision required the superior court to

---

[33] Moreover, on June 12, 2009, our Supreme Court recalled its January 15, 2009 decision in *Yousoufian*, a case directly bearing on the issues here. The Supreme Court did not issue its new *Yousoufian* decision until March 25, 2010, contributing to the delay here.

[34] West also accuses his former counsel of conspiring with the County's counsel "to obstruct West from timely collection of his penalties and costs." Reply Br. of Appellant at 18. This contention is outside both the record and the scope of this appeal.

"award[ ] all costs, including reasonable attorney fees" to the *"person* who prevails against an agency" in a PRA action, namely him. Reply Br. of Appellant at 17 (emphasis added). Although West is correct that he, and not his former counsel, prevailed against the County, West ignores the plain language of RCW 42.56.550(4), which awards "reasonable *attorney* fees," not fees in lieu of attorney fees to nonattorneys who represent themselves in PRA actions.

¶63 Second, and more importantly, we have recently addressed and rejected the argument that West advances here. In *Mitchell v. Department of Corrections,* 164 Wn. App. 597, 260 P.3d 249 (2011), we held that a nonlawyer defendant litigating a PRA action pro se incurs no attorney fees and is not entitled to receive an attorney fee award himself under RCW 42.56.550(4).[35] Like Mitchell, West is not an attorney and, thus, like Mitchell, he neither earned attorney fees nor is entitled to such an award under the PRA. *See Mitchell,* 164 Wn. App. at 608.

¶64 West further asserts that "[t]he [superior] [c]ourt also erred in [its] pos[t]judgment proceedings by allowing the filing and execution of a post judgment attorney's lien by counsel in violation of the precedent of [*Ross v. Scannell*], 97 Wn.2d 598[, 647 P.2d 1004 (1982)]." Br. of Appellant at 44. But West provides no analysis of how *Scannell* might apply here. On the contrary, our reading of *Scannell* leads us to conclude that it does not apply: In *Scannell* our Supreme Court held that professional misconduct may be grounds for denying attorney fees to an attorney. *Scannell,* 97 Wn.2d at 610. West's having cited no authority to support this argument, we do not further consider it. *See Holland,* 90 Wn. App. at 538 ("Passing treatment of an issue or lack of reasoned argument is insufficient to merit judi-

---

[35] *See also In re Marriage of Brown,* 159 Wn. App. 931, 938-39, 247 P.3d 466 (2011) (Washington courts have awarded attorney fees to pro se litigants only when those litigants were themselves attorneys because they must take time from their practices to prepare and to appear like any other lawyer would.) (citing *Leen v. Demopolis,* 62 Wn. App. 473, 486-87, 815 P.2d 269 (1991)). We are aware of no Washington case that has extended this reasoning to a nonlawyer pro se litigant.

cial consideration."); *see also* RAP 10.3(a)(6), 10.4; *Marintorres*, 93 Wn. App. at 452.

¶65 We affirm.

ARMSTRONG, J., concurs.

QUINN-BRINTNALL, J., concurs in the result only.