IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| In the Matter of the Parental Rights to: | ) | No. 36110-1-III |
| | ) | |
| M.W. | ) | UNPUBLISHED OPINION |
| | ) | |
| | ) | |

PENNELL, J. — C.W. appeals an order terminating her parental rights to M.W. We affirm.

## FACTS

C.W. gave birth to her daughter, M.W., in 2014. Seven months later, M.W. was presented at the hospital with severe burns sustained during a house fire. Child Protective Services launched an investigation and removed M.W. from C.W.'s care. At the time of M.W.'s removal, the Department of Social and Health Services suspected C.W. of

methamphetamine use, based on her prior history,[1] her appearance, and the circumstances

of M.W.'s injuries. Department social workers were concerned C.W.'s struggles with

substance abuse and resistance to treatment impaired her ability to provide for M.W.'s

basic needs.

In August 2015, the parties entered into an agreed order of dependency. C.W.'s

primary parental deficiencies were identified as substance abuse and mental health issues.

The trial court directed C.W. to participate in several remedial services, including drug

and mental health treatment. Things did not go well. For the next two years, C.W. failed

to avail herself of any court-ordered services. She also refused to comply with court-

ordered urinalysis testing. On August 31, 2017, the Department petitioned to end C.W.'s

parental rights over M.W.

Trial took place in April 2018. At trial, the Department's staff had difficulty

recalling some of the dependency's details. Notably, the Department had difficulty

recounting the specifics of C.W.'s referrals for services. However, C.W. testified and

admitted to knowing of each referral except for the mental health evaluations.

---

[1] In addition to the Department's involvement with M.W., C.W.'s older child was involved in dependency proceedings based on C.W.'s drug use. C.W. failed to follow through with services and substance abuse treatment during her older child's case. By the time of trial regarding M.W., C.W.'s rights to her older child had been terminated and the older child had been adopted.

In addition, a Department social worker testified that, based on her review of the file and case notes, she had no doubt C.W. had been provided referrals for a psychological and neuropsychological evaluation. The trial testimony also established C.W. had received service referrals during the dependency for her older child that overlapped with M.W.'s dependency.

Despite evading most departmental services, C.W. claimed to have corrected her parental deficiencies on her own. C.W. testified she no longer had a substance abuse problem. She also maintained that she was not suffering from mental illness, only situational depression related to parent-child separation. C.W. pointed out that she had obtained a substance abuse evaluation in February 2018 and a mental health evaluation in March 2018. Although C.W.'s substance abuse evaluation indicated she had a severe substance abuse disorder and needed intensive outpatient treatment, C.W. testified that she did not agree with the evaluation's analysis. At the time of trial, C.W. was not yet engaged in any treatment services.

C.W. testified that her positive turnaround was largely attributable to the supportive living environment provided by her new boyfriend. C.W.'s boyfriend also took the stand at trial and corroborated at least some of C.W.'s testimony. C.W.'s boyfriend explained he had been living with C.W. since August 2017, and since that time

he had observed C.W. to be sober and working through her depression. C.W.'s boyfriend did admit that C.W. had never discussed her substance abuse disorder with him.

The Department's representative testified she was skeptical of C.W.'s boyfriend. C.W. had refused to provide the name and address of her boyfriend until a few days before trial. When the Department was finally able to run a background check on the boyfriend's name, he did not pass.

At the close of her trial testimony, C.W. was asked how the court could be assured she would engage in recommended services, should the court opt to continue with the dependency in lieu of termination. C.W. testified, "I don't really know. I can just say that it will happen." Report of Proceedings (RP) (Apr. 16, 2018) at 150.

The court found C.W.'s assurances unpersuasive. It terminated her parental rights, finding that C.W. had been offered all necessary services and C.W.'s parental deficiencies could not be remedied in the time appropriate for M.W.'s needs. C.W. appeals the termination order.

## ANALYSIS

An order terminating parental rights is subject to two statutory prerequisites.

No. 36110-1-III
*In re Parental Rights to M.W.*

First, the Department must prove the six elements outlined in RCW 13.34.180(1)[2]

by clear and convincing evidence. RCW 13.34.190(1)(a)(i); *In re Dependency of*

*T.L.G.*, 126 Wn. App. 181, 197, 108 P.3d 156 (2005). Second, a preponderance

of the evidence must establish that termination is in the child's best interests.

RCW 13.34.190(1)(b); *In re Welfare of A.B.*, 168 Wn.2d 908, 911, 232 P.3d 1104 (2010).

---

[2] The statute reads, in relevant part:

(1) A petition seeking termination of a parent and child relationship may be filed in juvenile court by any party to the dependency proceedings concerning that child. Such petition shall conform to the requirements of RCW 13.34.040, shall be served upon the parties as provided in RCW 13.34.070(8), and shall allege all of the following unless subsection (3) or (4) of this section applies:

(a) That the child has been found to be a dependent child;

(b) That the court has entered a dispositional order pursuant to RCW 13.34.130;

(c) That the child has been removed or will, at the time of the hearing, have been removed from the custody of the parent for a period of at least six months pursuant to a finding of dependency;

(d) That the services ordered under RCW 13.34.136 have been expressly and understandably offered or provided and all necessary services, reasonably available, capable of correcting the parental deficiencies within the foreseeable future have been expressly and understandably offered or provided;

(e) That there is little likelihood that conditions will be remedied so that the child can be returned to the parent in the near future.

. . . .

(f) That continuation of the parent and child relationship clearly diminishes the child's prospects for early integration into a stable and permanent home.

RCW 13.34.180(1).

In addition to these two statutory requirements, due process also requires the court to make a finding of current parental unfitness. *In re Parental Rights to K.M.M.*, 186 Wn.2d 466, 479, 379 P.3d 75 (2016).

C.W. does not substantively challenge the court's finding that termination of her parental rights is in M.W.'s best interests.[3] Her appeal focuses on the statutory elements provided by RCW 13.34.180(1) and parental fitness.

*Statutory prerequisites for termination*

One of the statutory requirements for termination is that the parent has been "expressly and understandably offered or provided" all court-ordered remedial services. RCW 13.34.180(1)(d). C.W. claims the Department failed to meet its burden of proving this requirement because the trial evidence never demonstrated C.W. was notified of court-ordered chemical dependency and mental health services.

C.W.'s criticism of the Department's proof is unconvincing. The purpose of notification is to confer knowledge. C.W. admitted at trial that she knew of the

---

[3] C.W. assigns error to—but presents no argument on—the trial court's finding (finding of fact 2.17) that termination is in M.W.'s best interests. Clerk's Papers at 83. On appeal, parties are required to support their arguments with "citations to legal authority and references to relevant parts of the record." RAP 10.3(6). Failure to do so constitutes a waiver of the assigned error. *In re Marriage of Fahey*, 164 Wn. App. 42, 59, 262 P.3d 128 (2011). This court does not analyze an issue where the party raising it has declined to do so. *See West v. Thurston County*, 168 Wn. App. 162, 195, 275 P.3d 1200 (2012). C.W.'s lack of argument waives her challenge to finding of fact 2.17.

Department's referral for substance abuse treatment. That admission was sufficient to prove the Department had notified her of the referral, regardless of whether the Department documented the referral process. In addition, a Department social worker testified she was confident C.W. had been provided a referral for a mental health evaluation. This testimony was corroborated by the fact that C.W. eventually obtained an evaluation shortly before trial. The trial court therefore had ample bases to find that requisite referrals had been made.

Even if the Department had failed to provide C.W. a timely referral for a mental health evaluation, this failure would be excused as futile. *See In re Dependency of T.R.*, 108 Wn. App. 149, 164-65, 29 P.3d 1275 (2001) (affirming termination of mother's parental rights when she failed to make timely progress during dependency). By the time of trial, M.W. was three years old and had been living away from C.W. for most of her life. During the time C.W. and M.W. were apart, C.W. failed to address her primary obstacle to reunification—untreated substance abuse disorder. After over two years of dependency proceedings, C.W. had not attended a single treatment session and had never submitted to a verified urinalysis test. According to the trial testimony, C.W. would need six to nine months to make strides in treatment and show she had made a lasting lifestyle change. This was too long for M.W, who needed permanency "now." RP (Apr.

7

16, 2018) at 85. Substantial evidence supports the trial court's findings that the Department had provided sufficient services.

*Current parental fitness*

Due process requires the Department to prove current parental unfitness prior to entry of a termination order. *A.B.*, 168 Wn.2d at 918-19. C.W. claims this burden was not met at trial because she presented evidence that she had addressed her substance abuse and mental health problems. We are unpersuaded by C.W.'s position.

C.W. failed to obtain either a substance abuse or mental health evaluation until shortly before trial. She never substantively participated in any services. The testimony from C.W.'s boyfriend that C.W. did not appear to be using drugs was unconvincing evidence that C.W. had finally achieved sobriety, particularly in light of C.W.'s absolute refusal to engage in drug testing. *See In re Welfare of A.G.*, 155 Wn. App. 578, 591, 229 P.3d 935 (2010) (Failure to participate in urinalysis testing justifies a finding that "substance abuse has not been corrected.").

There was ample evidence at trial linking C.W.'s failed efforts at services to her inability to parent. C.W. herself admitted that her depression would cause her to shut down and fail to communicate. In addition, the trial testimony showed C.W.'s substance abuse disorder inhibited her ability to meet M.W.'s day-to-day needs. C.W.'s refusal to work with the Department and participate in services prohibited the Department from

8

independently assessing whether C.W. had made the types of changes necessary for M.W.'s safe return to C.W.'s care. Given these circumstances, the trial court had every reason to believe C.W.'s parental deficiencies were ongoing and posed a barrier to reunification in M.W.'s foreseeable future.

## CONCLUSION

The order of termination is affirmed.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Pennell, J.

WE CONCUR:

_____       _____
Lawrence-Berrey, C.J.                 Korsmo, J.

9