FILED
COURT OF APPEALS
DIVISION II

2013 JUN -4 AM 8:54

STATE OF WASHINGTON
BY_____
DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| DEREK E. GRONQUIST,<br><br>     Appellant,<br><br> v.<br><br>WASHINGTON STATE DEPARTMENT<br>OF LICENSING,<br><br>     Respondent. | No. 41897-5-II<br><br><br>PUBLISHED OPINION |

VAN DEREN, J. — Derek E. Gronquist appeals from the trial court's summary judgment order in favor of the Department of Licensing (Licensing) on Gronquist's Public Records Act (PRA)[1] claim. Gronquist argues that the trial court erred when it granted Licensing's summary judgment motion because: (1) Licensing failed to respond within five business days of his PRA request, thus entitling him to penalties; (2) the information Licensing redacted from a master business license application was not exempt from disclosure under the PRA; (3) Licensing failed to provide explanations for each redaction, also entitling him to penalties; and (4) the trial court erred in failing to accept deposition transcripts for filing in support of his PRA claim.

We hold that (1) Licensing failed to respond to Gronquist's request within the statutory time frame, (2) none of the redacted information was exempt under the statutes

---

[1] Chapter 42.56 RCW.

cited by Licensing at the time Gronquist made his PRA request, (3) Licensing failed to provide timely and adequate explanations for the redactions, and (4) the trial court erred when it refused to file Gronquist's deposition transcripts.

The information Licensing redacted is now exempt from disclosure under RCW 19.02.115, the 2011 Department of Revenue (Revenue) confidentiality statute, and we do not order Revenue to provide it. But we remand this matter to the trial court to determine whether an award of costs and penalties to Gronquist is appropriate, and the amount thereof, after considering: (1) Licensing's failure to timely respond to Gronquist's request; (2) Licensing's proffered basis for some of the redactions, which exemptions we hold did not apply; (3) the period of time Licensing provided no explanation for its redactions from the application; and (4) the fact that Licensing's 2009 redactions are in accord with the exemptions in effect beginning July 1, 2011. We also remand this matter to the trial court for it to accept for filing, and for its consideration, the deposition transcripts Gronquist attempted to file in 2010, and again in 2011, at our direction.

## FACTS

In a letter dated July 20, 2009, Gronquist, who at the time was an inmate at the Monroe Correctional Complex, submitted a request to Licensing under the PRA requesting the master business license application[2] for a company called "Maureen's House Cleaning." Clerk's Papers

---

[2] Master business license applications are administered by Washington's business license center. Chapter 19.02 RCW. The center is responsible for "[d]eveloping and administering a computerized one-stop master license system capable of storing, retrieving, and exchanging license information with due regard to privacy statutes, as well as issuing and renewing master licenses in an efficient manner." RCW 19.02.030(2)(a). The service collects license applicants' information in an application and then seeks approval of the application from the agency that has authority to issue the license. RCW 19.02.070. At the time Gronquist made his PRA request, Licensing administered the master license service, but on July 1, 2011, the service was

41897-5-II

(CP) at 186. Licensing responded in a letter dated July 31, 2009, in which it provided Gronquist with the requested application with certain information redacted.[3]

Licensing redacted much of the application without providing a statutory basis for the redactions. These redactions included the: (1) business telephone number, (2) information about whether the business was located within the Seattle city limits, (3) business's electronic mail address, (4) owner's home address, (5) owner's date of birth, (6) owner's social security number, (7) percentage of the business owned by the applicant, (8) owner's home telephone number, (9) owner's marital status, (10) business's estimated gross annual income, (11) business activities performed, (12) products or services provided, (13) information about whether the owner bought, leased, or acquired an existing business, (14) information about whether the owner purchased or leased any fixtures or equipment on which he or she did not pay sales tax, (15) name of the owner's bank, and (16) existence of or plans to have employees.

In February or March 2010, Gronquist sued Licensing, alleging that Licensing violated the PRA by providing a redacted copy of the application. He asked the trial court to compel disclosure of an unredacted copy of the application and asked for statutory costs and penalties under the PRA. In a letter dated March 1, 2010, after Licensing received Gronquist's complaint,

---

transferred from Licensing to Revenue. LAWS OF 2011, ch. 298, § 1 (included in the notes following RCW 19.02.020).

[3] The record does not clearly reflect when Licensing received Gronquist's request. The letter responding to his request stated that Licensing received the letter on July 31, 2009. But an administrator of the master licensing service stated in a declaration filed in support of Licensing's summary judgment motion that her office received the letter "[o]n or about July 21, 2009." CP at 115.

3

Licensing wrote Gronquist a letter stating the reasons for redacting the information from the application.[4] The letter stated:

> Applications contain some information that is exempt from public disclosure pursuant to the statutes governing the agencies on whose behalf the information is collected. The statutory basis for the exemptions is found at RCW 50.13.020 (Employment Security [Department]), RCW 51.16.070 (Department of Labor and Industries) and RCW 82.32.330[5] ([Revenue]). It was pursuant to the requirement of these statutes that portions of the [application] for Maureen's House Cleaning were redacted.

CP at 205.

On October 21, 2010, Gronquist filed a motion to show cause why an unredacted copy of the application should not be provided and why he should not be awarded costs and penalties under the PRA. On November 4, 2010, Gronquist filed a motion for sanctions against Licensing, alleging that it intentionally violated the PRA, lied to Gronquist, and failed to properly train and supervise its employees. On November 19, Licensing filed a summary judgment motion claiming that it properly redacted the information and ultimately provided Gronquist with an explanation for the redactions; thus, Gronquist was not entitled to costs and penalties.

On October 15, 2010, Gronquist mailed three deposition transcripts to the trial court for filing to support his show cause motion, his motion for sanctions, and his response to Licensing's motion for summary judgment. The trial court clerk returned the transcripts to Gronquist with a

---

[4] The timing of Gronquist's suit and the date Licensing provided an explanation for the redactions are not clear from the record. The date stamp on the complaint says it was filed on March 9, 2010, but Licensing's brief, without citation, states that Gronquist filed his suit on February 19, 2010. The date above the signature on the complaint is February 1, 2010. But there is no dispute that Licensing failed to provide an explanation for its redactions until after Gronquist filed suit.

[5] The legislature has amended RCW 82.32.330 multiple times since July 28, 2009, the date Licensing should have responded to Gronquist's PRA request. LAWS OF 2011, ch. 174, § 404; LAWS OF 2010, ch. 112, § 13; LAWS OF 2010, ch. 106, § 104; LAWS OF 2009, ch. 563, § 213. But because the changes are not relevant to our analysis, we cite the current version of the statute.

41897-5-II

letter stating that the depositions could not be filed, citing CR 32(a).[6] Gronquist returned the

depositions to the clerk, asserting that the depositions should be filed under CR 32(a) and that he

needed them to support his upcoming motions. The clerk responded that the depositions had

been forwarded to the presiding judge in Gronquist's case and clarified the clerk's office's

previous letter to Gronquist, "CR 32(a) states, 'At the trial or upon the hearing of a motion . . .'

[y]ou may, at the time of your hearing, request the judge to publish the deposition. If the judge

grants your request, the deposition will be filed into the court file. It cannot, however, be filed

until such time." CP at 218.

On December 21, 2010, the trial court ordered Licensing to submit the unredacted

application for in camera review. Licensing submitted the document to the trial court

accompanied by the following "explanation for redaction":

> The . . . application in question has four pages. The first page is not
> redacted. On the second page, all identifying information is redacted except for
> business type, i.e. sole proprietorship, starting date, name of business, owner and
> business address. This is pursuant to Revenue statutes [RCW] 82.32.330(1)(k)[7]
> (attached for the court's convenience[)]. Marital status and social security

---

[6] CR 32(a) provides in relevant part:
> **Use of Depositions.** At the trial or upon the hearing of a motion or an
> interlocutory proceeding, any part or all of a deposition, so far as admissible
> under the Rules of Evidence applied as though the witness were then present and
> testifying, may be used against any party who was present or represented at the
> taking of the deposition or who had reasonable notice thereof, in accordance with
> [certain] provisions.

[7] RCW 82.32.330(1)(k) does not exist in any version of the statute; thus, it appears that
Licensing's reference to this statute was a typographical error. But RCW 82.32.330(3)(k)
provides that RCW 82.32.330 does not prevent Revenue from
> [d]isclosing, in a manner that is not associated with other tax information, the
> taxpayer name, entity type, business address, mailing address, revenue tax
> registration numbers, reseller permit numbers and the expiration date and status of
> such permits, North American industry classification system or standard industrial
> classification code of a taxpayer, and the dates of opening and closing of business.

5

number were also withheld under the Employment Security general confidentiality statute RCW 50.13.020 (attached for the court's convenience). On the third page information about the owner's income, services sales tax, banking institution, and employee status is withheld pursuant to the strictures of [RCW] 82.32.330 referenced above.

Scrutiny of the un-redacted and redacted document reveal[s] no errors. No information was redacted that should have been included. Information about any employees is redacted pursuant to RCW 51.16.070 the Labor and Industries statute (attached for the court[']s convenience). The last page is not redacted.

CP at 145.

The trial court granted Licensing's summary judgment motion and its order stated:

The court reviewed in camera the unredacted copies of documents that we[re] provided to . . . Gronquist with redactions. The court is satisfied that the redacted material is not subject to disclosure, but is protected as confidential by RCW 50.13.020, RCW 51.16.070, [and] RCW 82.32.330, and the [PRA], RCW 42.56.

In this case, [Licensing] produced materials for [Gronquist] with redactions. At the time of production, there was no accompanying brief explanation of the reason for the redactions. No request for an explanation was made. When the lawsuit was filed identifying [Gronquist]'s issue, [Licensing] provided an explanation for the redactions. The Court is aware of the recent decision in [*Sanders v. State*], 169 Wn.2d 827, 240 P.3d 120 (2010). The Court finds that no information was wrongfully withheld in this case. The court finds that the initial failure of [Licensing] to provide the explanation for the redactions was not a violation of the [PRA] giving rise to penalties.

CP at 163-64.

On March 18, 2011, Gronquist filed a notice of appeal. We informed Gronquist and

Licensing that the trial court's summary judgment order did not comply with RAP 9.12,[8] which requires that all evidence called to the attention of the trial court be specified in the order before that order can be appealed. The letter directed Gronquist to obtain a complying order from the trial court. On May 6, 2011, the trial court issued a supplemental order granting Licensing's motion for summary judgment that stated that two documents were called to its attention when deciding Licensing's summary judgment motion: a redacted and an unredacted copy of the application.[9]

On June 6, 2011, Gronquist filed a designation of clerk's papers asking the trial court to transfer the deposition transcripts that he had sent to the superior court to this court. The trial court did not transfer the deposition transcripts because they were not part of the court file. Gronquist filed a motion asking us to compel the superior court to transfer the depositions to this

---

[8] RAP 9.12 provides:

**SPECIAL RULE FOR ORDER ON SUMMARY JUDGMENT**

On review of an order granting or denying a motion for summary judgment the appellate court will consider only evidence and issues called to the attention of the trial court. The order granting or denying the motion for summary judgment shall designate the documents and other evidence called to the attention of the trial court before the order on summary judgment was entered. Documents or other evidence called to the attention of the trial court but not designated in the order shall be made a part of the record by supplemental order of the trial court or by stipulation of counsel.

[9] The supplemental order provided:

THE DOCUMENTS CALLED TO THE COURT'S ATTENTION WERE:

Two copies of a[n application] for "Maureen's Housecleaning." One copy was provided to . . . Gronquist with redactions. Another copy of the same document was lodged with the court for confidential in camera review pursuant to Thurston County Local Civil Rule 16 (c) (2). The court is satisfied that the redacted material is not subject to disclosure, but is protected as confidential by RCW 50.13.020, RCW 51.16.070, [and] RCW 82.32.330, and the [PRA], RCW 42.56.

CP at 167.

41897-5-II

court. We ruled that the depositions "are not on file with the clerk's office. Gronquist must seek relief in the trial court, directing its clerk to file the depositions, before they can be part of the record in this court. Gronquist is granted a 45-day extension of time to do the above and file an amended brief." Ruling on Motion to Show Cause, *Gronquist v. Dep't of Licensing*, No. 41897-5-II (Wash. Ct. App. Sept. 7, 2011).

In October 2011, Gronquist filed a motion to settle the record in the trial court, asking that the trial court allow him to file the deposition transcripts. The trial court denied the motion, stating, "[T]he Plaintiff did not make deposition transcripts part of the record[,] so the depositions were not considered by the court." CP at 221.

Gronquist timely appeals both the trial court's summary judgment in favor of Licensing and the trial court's denial of his motion to settle the record by filing the deposition transcripts.

ANALYSIS

Gronquist argues that the trial court erred when it granted Licensing's summary judgment motion because (1) Licensing failed to respond within five business days of his PRA request, thus entitling him to penalties; (2) the information Licensing redacted from the application was not exempt from disclosure under the PRA; (3) Licensing failed to provide a proper explanation for the redactions, also entitling him to penalties; and (4) the trial court failed to properly file the deposition transcripts he submitted in support of his PRA claim.

We agree with Gronquist that some of the redacted information was not exempt when Licensing answered his request and that Licensing did not timely respond and failed to provide explanations for its redactions, thereby silently withholding the information until after Gronquist filed his lawsuit. We remand to the trial court to consider the imposition of costs and penalties after consideration of the entire record, including the depositions to be filed by the trial court at

8

our direction. We do not hold that the withheld information must be produced because it is now exempt from disclosure under the 2011 statute transferring responsibility for the master business license service and all records pertaining to applications from Licensing to Revenue. RCW 19.02.115; LAWS OF 2011, ch. 298, § 2 (included in the notes following RCW 19.02.020).

## I. STANDARD OF REVIEW

We review agency action under the PRA de novo. *Neighborhood Alliance of Spokane County v. Spokane County*, 172 Wn.2d 702, 715, 261 P.3d 119 (2011) (citing RCW 42.56.550(3)). In a PRA case, the trial court "may conduct a hearing based solely on affidavits," and where, as here, the "case presents a question of law which was decided by the trial court solely on the basis of documentary evidence and legal arguments, review is de novo." RCW 42.56.550(3); *Confederated Tribes v. Johnson*, 135 Wn.2d 734, 744, 958 P.2d 260 (1998).

We review an order granting summary judgment de novo, engaging in the same inquiry as the trial court. *Weden v. San Juan County*, 135 Wn.2d 678, 689, 958 P.2d 273 (1998). Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. CR 56(c). Although we review agency action under the PRA and summary judgment orders de novo, we review the amount of a trial court's penalty award under the PRA for abuse of discretion. *Double H, LP v. Dep't of Ecology*, 166 Wn. App. 707, 712, 271 P.3d 322, *review denied*, 174 Wn.2d 1014 (2012).

## II. PUBLIC RECORDS ACT

The PRA "requires all state and local agencies to disclose any public record upon request, unless the record falls within certain very specific exemptions." *Progressive Animal Welfare*

*Soc. v. Univ. of Wash.*, 125 Wn.2d 243, 250, 884 P.2d 592 (1994) (*PAWS*).[10] "The PRA is a strongly worded mandate for broad disclosure of public records." *Neighborhood Alliance*, 172 Wn.2d at 714. In light of this purpose, the PRA is liberally construed in favor of disclosure and its exemptions are narrowly construed. RCW 42.56.030.

Under the PRA, agencies must respond within five business days of receipt of a public records request. RCW 42.56.520; *West v. Thurston County*, 168 Wn. App. 162, 182, 275 P.3d 1200 (2012). But an agency may withhold all or part of a record if it falls within an exemption under the PRA "or other statute which exempts or prohibits disclosure of specific information or records." RCW 42.56.070(1). "[T]he PRA's 'other statute' exemption allows for a separate statute to preclude disclosure of 'specific information' or entire 'records.'" *Ameriquest Mortg. Co. v. Office of Attorney Gen.*, 170 Wn.2d 418, 440, 241 P.3d 1245 (2010) (quoting RCW 42.56.070(1)). But if another exemption statute and the PRA conflict, the exemption provisions of the PRA govern. RCW 42.56.030.

If an agency refuses to permit public inspection of particular records, "[t]he burden of proof shall be on the agency to establish that refusal to permit public inspection and copying is in accordance with a statute that exempts or prohibits disclosure in whole or in part of specific information or records." RCW 42.56.550(1). Part of this burden requires an agency withholding records to "include a statement of the specific exemption authorizing the withholding of the

---

[10] In *PAWS*, our Supreme Court interpreted and applied former chapter 42.17 RCW, the Public Disclosure Act (PDA). Effective July 1, 2006, the PDA was renamed the PRA and was recodified as chapter 42.56 RCW. LAWS OF 2005, ch. 274, §§ 102–03. Although our Supreme Court interpreted the former PDA in *PAWS*, we refer to the current PRA when discussing the case because the relevant provisions are identical.

record (or part) and a brief explanation of how the exemption applies to the record withheld." RCW 42.56.210(3).

Our Supreme Court has characterized failure to provide an explanation as "silent withholding," which occurs when "an agency . . . retain[s] a record or portion without providing the required link to a specific exemption, and without providing the required explanation of how the exemption applies to the specific record withheld." *PAWS*, 125 Wn.2d at 270. Providing the required explanation is important not only because it informs the requester why the documents are being withheld, but also because failure to provide the explanation "vitiate[s]" "the reviewing court's ability to conduct the statutorily required de novo review." *PAWS*, 125 Wn.2d at 270. *See also Sanders*, 169 Wn.2d at 846 ("Claimed exemptions cannot be vetted for validity if they are unexplained.").

To comply with the PRA, the agency must provide an explanation that specifically describes how the claimed exemption applies to the withheld information because "[a]llowing the mere identification of a document and the claimed exemption to count as a 'brief explanation' would render [the PRA's] brief-explanation clause superfluous." *Sanders*, 169 Wn.2d at 846. One method by which an agency can properly identify withheld information is with a privilege log. *Rental Hous. Ass'n of Puget Sound v. City of Des Moines*, 165 Wn.2d 525, 538–39, 199 P.3d 393 (2009) (citing WAC 44–14–04004(4)(b)(ii)). The log should include the type of information that would enable a records requester to make a threshold determination of whether the agency properly claimed the privilege. WAC 44–14–04004(4)(b)(ii); *Rental Hous. Ass'n*, 165 Wn.2d at 539.

The PRA requires the trial court to award attorney fees and costs to a party who "prevails against an agency in any action in the courts seeking the right to inspect or copy any public

41897-5-II

record or the right to receive a response to a public record request within a reasonable amount of time." RCW 42.56.550(4). A PRA claimant "prevails" against an agency if the agency wrongfully withheld the documents. *Germeau v. Mason County*, 166 Wn. App. 789, 811, 271 P.3d 932, *review denied*, 174 Wn.2d 1010 (2012).

"In addition, it shall be within the discretion of the court to award . . . an amount not to exceed one hundred dollars for each day that he or she was denied the right to inspect or copy [a wrongfully withheld] public record." RCW 42.56.550(4).[11] "A PRA penalty determination involves a two-step inquiry: (1) determining the appropriate daily penalty amount; and (2) calculating the number of days the public agency denied the party access to the records." *West*, 168 Wn. App. at 188.

We review the trial court's penalty award for abuse of discretion. *Double H*, 166 Wn. App. at 712-13. But because the penalty period is "strictly defined by the number of days a person has been denied a record after it should have been produced," it is a matter of law that we review de novo. *Double H*, 166 Wn. App. at 712-13. "[T]he PRA requires the agency to pay a penalty for each day the requester is unable to inspect or copy a nonexempt record" and the penalty period includes the amount of time that any suit relating to production of the records was pending. *Sanders*, 169 Wn.2d at 863-64.

---

[11] Before July 22, 2011, the PRA required courts to impose a minimum per-day penalty of $5. Former RCW 42.56.550(4) (2005); LAWS OF 2011, ch. 273, § 1. Courts may now impose a daily penalty ranging from $0 to $100. RCW 42.56.550(4); *West*, 168 Wn. App. at 188, n.29. RCW 42.56.565 was also amended in 2011 and the following provision was added, "A court shall not award penalties under RCW 42.56.550(4) to a person who was serving a criminal sentence in a state . . . correctional facility on the date the request for public records was made, unless the court finds that the agency acted in bad faith in denying the person the opportunity to inspect or copy a public record. LAWS OF 2011, ch. 300, § 1. The section "applies to all actions brought under RCW 42.56.550 in which final judgment has not been entered as of [July 22, 2011]." LAWS OF 2011, ch. 300, § 2 (included in the notes following RCW 42.56.565).

12

A. Delayed Response to Gronquist's Public Records Request

Gronquist contends that Licensing violated the PRA because Licensing failed to respond to his PRA request within five business days. Licensing responds that we should decline to address Gronquist's claim because he raises it for the first time on appeal. Licensing also contends that even if we were to address this issue, "[t]he uncontroverted evidence in the record is that Gronquist's letter arrived on the 31st of July, and was responded to timely on that date." Licensing misrepresents the record in both of these arguments.

First, the evidence surrounding Licensing's receipt of Gronquist's request was not "uncontroverted." Although the letter responding to Gronquist's request provides that Licensing received it on July 31, 2009, Licensing attached the declaration of one of its senior administrators to both its summary judgment motion and its response to Gronquist's show cause motion that stated, "On or about July 21, 2009, our office received a request for the business license application for Maureen's Housecleaning [sic] from . . . Gronquist." CP at 115.

Second, Gronquist raised the timeliness issue at the trial court. Gronquist was not aware of the declaration stating that Licensing actually received the letter on July 21 instead of July 31 until he received Licensing's response to his motion to show cause and Licensing's summary judgment motion. After receipt of that information, Gronquist addressed Licensing's late response in both his reply in support of his show cause motion and his response to Licensing's summary judgment motion.

RCW 42.56.520 requires agencies to respond to public records requests within five business days. Here, Licensing responded after eight business days. Accordingly, Licensing violated RCW 42.56.520 when it failed to provide Gronquist with the application within the statutory time frame.

13

B. Exemptions—Wrongful Withholding

Gronquist also argues that the trial court erred when it concluded that the information it withheld was properly redacted from the application. Licensing responds that RCW 82.32.330, RCW 50.13.020, and RCW 51.16.070 authorized its redacting the business license owner's home address, home telephone number, business telephone number, income information, employee information, banking information, and marital status.[12]

Licensing's letter to Gronquist after he filed his claim for violation of the PRA identified Revenue statute RCW 82.32.330, Employment Security Department (Employment Security) statute RCW 50.13.020, and Department of Labor and Industries (Labor and Industries) statute RCW 51.16.070 as justification to support its redactions from the application without specifying which statute justified each redaction. In Licensing's explanation to the trial court for the redactions when it submitted the unredacted application for in camera review, Licensing attempted to identify the particular portions of redacted information that correspond with the cited statutes.

But Licensing has failed to meet its burden to show that the information was covered by an exemption for at least two of the redactions. Licensing's explanation fails to mention two pieces of redacted information: (1) the type of business activities performed in Washington and (2) whether the owner bought, leased, or acquired all or part of an existing business. Thus, the information provided by Licensing is insufficient to enable a records requester to make a threshold determination of whether the agency properly claimed the privilege. WAC 44–14–04004(4)(b)(ii); *Rental Hous. Ass'n*, 165 Wn.2d at 539. Because Licensing has failed to assert

---

[12] Licensing fails to assert on appeal that any other information in the application was properly withheld.

14

41897-5-II

why any exemption applies to these redactions, it has failed to meet its burden of proving why it redacted that information, and the trial court erred by granting summary judgment to Licensing. RCW 42.56.550(1).

We turn to the remaining redactions to determine whether the statutes cited by Licensing support withholding that information.

### 1. RCW 82.32.330

Licensing's explanation to the trial court stated that RCW 82.32.330 exempted the following information: (1) the business telephone number, (2) whether the business was inside the city limits, (3) the owner's home address, (4) the owner's date of birth, (5) the owner's percentage of ownership of the business, (6) the owner's home telephone number, (7) the owner's income, (8) the services provided by the owner, (9) whether the owner purchased or leased any fixtures or equipment on which the owner did not pay sales tax, (10) the owner's banking institution, and (11) whether the owner had or planned to have employees.

RCW 82.32.330(2) provides, "Returns and tax information are confidential and privileged, and except as authorized by this section, neither the department of revenue nor any other person may disclose any return or tax information."

> "Tax information" means (i) a taxpayer's identity,[13] (ii) the nature, source, or amount of the taxpayer's income, payments, receipts, deductions, exemptions, credits, assets, liabilities, net worth, tax liability deficiencies, overassessments, or tax payments, whether taken from the taxpayer's books and records or any other source, (iii) whether the taxpayer's return was, is being, or will be examined or subject to other investigation or processing, (iv) a part of a written determination that is not designated as a precedent and disclosed pursuant to RCW 82.32.410, or a background file document relating to a written determination, and (v) other data

---

[13] "'Taxpayer identity' means the taxpayer's name, address, telephone number, registration number, or any combination thereof, or any other information disclosing the identity of the taxpayer." RCW 82.32.330(1)(e).

15

> received by, recorded by, prepared by, furnished to, or collected by the department of revenue with respect to the determination of the existence, or possible existence, of liability, or the amount thereof, of a person under the laws of this state for a tax, penalty, interest, fine, forfeiture, or other imposition, or offense. However, data, material, or documents that do not disclose information related to a specific or identifiable taxpayer do not constitute tax information under this section. Except as provided by RCW 82.32.410, nothing in this chapter requires any person possessing data, material, or documents made confidential and privileged by this section to delete information from such data, material, or documents so as to permit its disclosure.

RCW 82.32.330(1)(c).

Gronquist notes that the statute Licensing cited in support of the exemptions authorizes disclosure of "tax information that is also maintained by another Washington state or local governmental agency as a public record available for inspection and copying under the [PRA]." RCW 82.32.330(3)(l). At the time the information was redacted from the application, Licensing was responsible for administering the application, not Revenue. LAWS OF 2011, ch. 298, § 1 (included in the notes following RCW 19.02.020). Thus, even if the application contained "tax information," RCW 82.32.330(3)(l) authorizes disclosure of the information by another agency, in this case Licensing.

Although Licensing failed to cite the PRA in its explanations to Gronquist, it now argues that the PRA itself authorizes application of the Revenue statute to the redacted information at issue here. RCW 42.56.230(4), found within the PRA's list of exemptions for "personal information," provides that the following information is exempt from public disclosure:

> Information required of any taxpayer in connection with the assessment or collection of any tax if the disclosure of the information to other persons would: (a) Be prohibited to such persons by RCW 84.08.210, 82.32.330, 84.40.020, 84.40.340, or any ordinance authorized under RCW 35.102.145; or (b) violate the taxpayer's right to privacy or result in unfair competitive disadvantage to the taxpayer.

16

41897-5-II

Gronquist contends that the PRA exemption applies only to "'[i]nformation required of any taxpayer in connection with the assessment or collection of any tax,'" and, thus, does not apply to the information in the application because "[m]aster [l]icense [a]pplications have no connection with the assessment or collection of taxes." Br. of Appellant at 27 (quoting RCW 42.56.230(3)). Gronquist is correct.

Our Supreme Court has held that business license applications are not a substitute for tax returns. *Ford Motor Co. v. City of Seattle, Exec. Services Dep't*, 160 Wn.2d 32, 56, 156 P.3d 185 (2007). In *Ford Motor Co.*, Ford sought to take advantage of a shorter statute of limitations period for collection of taxes that could be used if a taxpaying entity had filed tax returns for the payment period at issue. 160 Wn.2d at 55. Ford argued that although it had not filed tax returns for the years in question, it had filed annual business license applications; thus, the shorter statute of limitations should apply. *Ford Motor Co.*, 160 Wn.2d at 55. Our Supreme Court rejected Ford's contention, holding that

> the annual business license application is exactly that—a license application, not a return. It is designed to license a company to engage in business, not to provide financial information for taxation purposes. . . . [A]lthough the license applications may request some financial data, they do not require the provision of sufficient financial data to allow for a computation of the appropriate tax.

*Ford Motor Co.*, 160 Wn.2d at 56. Because business license applications do not "provide financial information for taxation purposes," we hold that the information contained in the application was not "required . . . in connection with the assessment or collection of any tax." *Ford Motor Co.*, 160 Wn.2d at 56; RCW 42.56.230(4). Accordingly, Licensing failed to meet its burden of proving that the information it redacted under RCW 82.32.330 was exempt from

17

disclosure.[14]

### 2. RCW 50.13.020

Licensing's explanation to the trial court also stated that RCW 50.13.020 exempted (1) the owner's social security number and (2) the owner's marital status. As a preliminary matter, Gronquist does not contest the redaction of the business owner's social security number from the application. Thus, we need only determine whether RCW 50.13.020 exempts the owner's marital status from disclosure. RCW 50.13.020 provides:

> Any information or records concerning an individual or employing unit obtained by [Employment Security] pursuant to the administration of this title or other programs for which [Employment Security] has responsibility shall be private and confidential, except as otherwise provided in this chapter. . . . Information or records may be released by [Employment Security when the release is:
> (1) Required by the federal government in connection with, or as a condition of funding for, a program being administered by [Employment Security]; or
> (2) Requested by a county clerk for the purposes of RCW 9.94A.760.

The PRA also authorizes exemptions under this statute, although Licensing failed to cite the PRA provision in its explanation to Gronquist or to argue it on appeal. One PRA exemption provides, "Records maintained by [Employment Security] and subject to chapter 50.13 RCW if provided to another individual or organization for operational, research, or evaluation purposes are exempt from disclosure under this chapter." RCW 42.56.410. Thus, the PRA authorizes application of RCW 50.13.020 to records "maintained by" Employment Security, and the Employment Security statute protects information "obtained by" Employment Security. RCW

---

[14] Even if we were to hold that the information in the application was connected with the assessment or collection of taxes, Gronquist argues, and we agree, that RCW 82.32.330 does not exempt all of the information Licensing claims. Applying RCW 82.32.330's definition of "tax information" to the claimed exemptions here reveals that only the owner's home and business telephone numbers, home address, and estimated gross annual income would be exempt if the statute applied. RCW 82.32.330(2). Licensing fails to demonstrate how RCW 82.32.330 protects any of the other information it claims was exempt.

18

42.56.410; RCW 50.13.020. The application here was maintained and obtained by Licensing, not Employment Security. Accordingly, neither RCW 50.13.020, nor the PRA statute authorizing its application, protect the owner's marital status in the application here.

Moreover, Gronquist argues, and we agree, that "[r]egardless of what agency maintains the record, RCW 50.13.020 simply does not apply to the information contained in the [application]." Br. of Appellant at 34. For the requirements of the Employment Security Act, Title 50 RCW, to apply, an entity must be an "'employer,'" meaning that it must have "persons in 'employment.'" *Language Connection, LLC v. Emp't Sec. Dep't*, 149 Wn. App. 575, 581, 205 P.3d 924 (2009) (quoting RCW 50.04.080). Here, Maureen's House Cleaning is a sole proprietorship and its application states that it has no employees. Accordingly, the Employment Security Act and the confidentiality statute therein do not apply to the application here.

### 3. RCW 51.16.070

Licensing's explanation to the trial court also provided that RCW 51.16.070, related to Labor and Industries, exempted information "about any employees." CP at 145. RCW 51.16.070(2) provides, "Information obtained from employing unit records under the provisions of this title shall be deemed confidential and shall not be open to public inspection."

Although Licensing fails to provide the particular redaction that it claims is exempt from disclosure under this statute, the only redacted information regarding employees on the application is whether the business has employees. Assuming that RCW 51.16.070 is Licensing's justification for that redaction, Licensing has failed to meet its burden to prove that an exemption applies under the PRA.

Gronquist argues, and we again agree, that Title 51 RCW does not apply to the Maureen's House Cleaning application because Maureen's House Cleaning is a sole

proprietorship without employees. "Chapter 51 RCW governs all aspects of a worker's remedy against his or her employer for injuries sustained in the course of employment." *Rafn Co. v. Dep't of Labor & Indus.*, 104 Wn. App. 947, 949, 17 P.3d 711 (2001) (citing RCW 51.04.010).

RCW 51.16.060 requires all employers, subject to some exceptions, to pay quarterly premiums to the state industrial insurance fund. *Rafn*, 104 Wn. App. at 949. Sole proprietors are exempted from this mandatory coverage. RCW 51.12.020(5). Maureen's House Cleaning is a sole proprietorship and declined optional industrial insurance coverage. Accordingly, Title 51 RCW and its confidentiality provision do not apply to the information in the application.

Moreover, even were we to apply the Labor and Industries confidentiality statute, it does not apply to the information in the application. RCW 51.16.070(2) provides that "[i]nformation obtained from employing unit records" is confidential. But the application is not an "employing unit record[ ]" because Maureen's House Cleaning is not an "employing unit." RCW 50.04.090(1) defines an "[e]mploying unit" as "any individual or any type of organization . . . which has or subsequent to January 1, 1937, had in its employ or in its 'employment' one or more individuals performing services within this state."

Because Licensing failed to meet its burden to show that it properly exempted any of this particular information from the application, we hold that the trial court erred when it concluded that Licensing's redactions were proper exemptions under the PRA.[15]

---

[15] We do not hold that no federal, state, or local exemptions apply to requests for information from licensing applications. For example, the PRA contains multiple exemptions pertaining to licensing, none of which apply to the licensing application at issue here. RCW 42.56.240(4) (concealed pistol licenses); RCW 42.56.250(1) (examination data used to administer a license); RCW 42.56.270(15) (fuel licenses); RCW 42.56.340 (membership lists in timeshares/condominiums regulated by Licensing); RCW 42.56.430(3) (fish and wildlife licenses); and RCW 42.56.450 (check cashers and sellers licensing applications).

4. Subsequent Legislation—RCW 19.02.115—Business License Center Act

In 2011, the Legislature transferred responsibility for master license applications and all records and personnel involved in the master license applications from Licensing to Revenue. LAWS OF 2011, ch. 298, § 2 (included in the notes following RCW 19.02.020). At the same time, the legislature adopted a confidentiality provision applicable to all information contained in licensing applications handled by Revenue. RCW 19.02.115(2), .020(2). Neither party cites this statute as it did not become effective until July 1, 2011, after Gronquist made his PRA request and after the trial court granted Licensing's summary judgment motion. LAWS OF 2011, ch. 298, § 43 (included in the notes following RCW 19.02.020).

RCW 19.02.115(2) provides:

> Licensing information is confidential and privileged, and except as authorized by this section, neither [Revenue] nor any other person may disclose any licensing information. Nothing in this chapter requires any person possessing licensing information made confidential and privileged by this section to delete information from such information so as to permit its disclosure.

The new statute defines "[l]icensing information" as

> any information created or obtained by [Revenue] in the administration of this chapter and chapters 19.80 and 59.30 RCW, which information relates to any person who: (i) Has applied for or has been issued a license or trade name; or (ii) has been issued an assessment or delinquency fee. Licensing information includes master applications, renewal applications, and master licenses.

RCW 19.02.115(1)(b).

---

Licensing also appears to assert that its memoranda of understanding with Employment Security, Labor and Industries, and Revenue provide an independent basis for the redactions without argument or citation to authority. But the memoranda of understanding protect only information that Licensing obtains *from* other agencies, not information that Licensing obtains *for* other agencies. Moreover, Licensing cannot create its own exemptions to public disclosure through a multi-agency agreement. *Hearst Corp. v. Hoppe*, 90 Wn.2d 123, 137, 580 P.2d 246 (1978) ("[A]n agency's promise of confidentiality or privacy is not adequate to establish the nondisclosability of information; promises cannot override the requirements of the disclosure law.").

21

But the confidentiality statute does not prohibit Revenue from

[d]isclosing, in a manner that is not associated with other licensing information, the name of a license applicant or license holder, entity type, registered trade name, business address, mailing address, unified business identifier number, list of licenses issued to a person through the master license system established in chapter 19.02 RCW and their issuance and expiration dates, and the dates of opening of a business.

RCW 19.02.115(3)(g). Thus, under the current statute, Revenue is required to redact all information on the application except the date the business was opened and the owner's name, entity type, registered trade name, business address, mailing address, and unified business identifier number. RCW 19.02.115. Although the statute was not in effect at the time of Gronquist's PRA request, the existence of the statute now limits the relief we can grant.

Under the confidentiality statutes cited by Licensing, the information redacted in the application was largely not exempt. Thus, Gronquist should have been the prevailing party at the trial court and, as such, may be entitled to costs and penalties. RCW 42.56.550(4). But under Revenue's current confidentiality statute pertaining to license applications, the information cannot be disclosed. RCW 19.02.115. We will not order Revenue to do what it is now prohibited to do under RCW 19.02.115.

C. No or Inadequate and Untimely Explanation for Redactions

Gronquist further argues that Licensing violated the PRA by failing to provide him with a proper and timely explanation for its redactions. We agree.

An agency withholding records under a PRA exemption must "include a statement of the specific exemption authorizing the withholding of the record (or part) and a brief explanation of how the exemption applies to the record withheld." RCW 42.56.210(3). Here, Licensing failed to give any kind of explanation when it sent the redacted application to Gronquist. Clearly,

failure to provide any of the information required by RCW 42.56.210(3) was a violation of the PRA. *See Citizens for Fair Share v. Dep't of Corr.*, 117 Wn. App. 411, 431, 72 P.3d 206 (2003) (failure to provide requester with specific exemption and explanation "clearly violated" former RCW 42.17.310, recodified as RCW 42.56.210 by LAWS OF 2005, ch. 274, § 103 (effective July 1, 2006)).

Licensing contends that although it failed to provide Gronquist with an explanation in its response to his request for the application, it did not violate the PRA because it eventually provided him with an explanation after he filed his lawsuit. But although Licensing provided statutory authority for the exemptions after Gronquist sued Licensing, it failed to specify what information had been redacted, which exemptions applied to each redaction, or how those exemptions applied. Again, Licensing failed to comply with the requirements of RCW 42.56.210(3). *Sanders*, 169 Wn.2d 846.

Licensing's ultimate explanation for the redactions that it submitted with the unredacted application for in camera review by the trial court also failed to meet the PRA requirements. In this explanation, Licensing did connect some of the redacted information and the statutory exemptions. But Licensing failed to identify each piece of redacted information it claims was exempt under a particular statute. And Licensing gave no reason for withholding the type of business activity performed in Washington and whether the owner bought, leased, or acquired all or part of an existing business. Licensing's failure to provide the mandatory link between the redacted information and a statutory exemption not only fails to comply with RCW 42.56.210(3), but also fails to provide this court with a record that we can meaningfully review. *Sanders*, 169 Wn.2d 846.

23

Moreover, Licensing's explanation of its redactions on appeal differs from the explanation Licensing offered to the trial court in two ways. First, the particular redacted information Licensing claims was exempt differs. At the trial court, Licensing claimed that all redacted information was exempt under particular statutes except the type of business activities performed in Washington and whether the owner bought, leased, or acquired all or part of an existing business. In contrast, Licensing's argument on appeal claims that only the owner's home address, home telephone number, business telephone number, income information, employee information, banking information, and marital status are exempt, leaving the remaining redacted information unexplained. Second, the statutes Licensing cited in support of the redactions differ. Licensing claimed at the trial court that the information in the application was exempt under RCW 82.32.330, RCW 50.13.020, and RCW 51.16.070. On appeal, Licensing cited these statutes, but for the first time also cited the PRA's exemption for "[p]ersonal information," RCW 42.56.230.

And although marked as an "explanation" at the trial court, Licensing failed to explain how any of the exemptions apply to the particular information redacted. Moreover, Licensing did not independently provide this particular explanation to Gronquist, but submitted the explanation to the trial court with the unredacted application for in camera review. Accordingly, Licensing violated the PRA because it failed to provide an adequate explanation for the redactions at any stage. *Sanders*, 169 Wn.2d 846.

D. Costs and Penalties

Gronquist argues that he should be awarded costs and penalties because (1) Licensing exceeded the statutory time frame for responding to his request, (2) the redacted information in

24

the application was not exempt, thus, Licensing wrongfully withheld the information, and (3) Licensing failed to properly explain the redactions.

The PRA requires the trial court to award attorney fees and costs to a party who "prevails against an agency in any action in the courts seeking the right to inspect or copy any public record or the right to receive a response to a public record request within a reasonable amount of time." RCW 42.56.550(4). A PRA claimant "prevails" against an agency if the agency wrongfully withheld the documents. *Germeau*, 166 Wn. App. at 811.

Here, Licensing was late responding to Gronquist's records request, provided no explanation of the redactions until after being sued, failed to provide an adequate explanation of the redactions at any stage, and redacted information from the application that was not exempt from disclosure. Accordingly, applying the statutes in effect at the time of the PRA request, Gronquist should have been the prevailing party below and was entitled to costs and penalties. RCW 42.56.550(4); *Germeau*, 166 Wn. App. at 811.

Our Supreme Court in *Yousoufian v. Office of Ron Sims*, 168 Wn.2d 444, 460-63, 467, 229 P.3d 735 (2010) (*Yousoufian* II) specified three categories of factors for determining an appropriate daily penalty: (1) "principal" factors, (2) "mitigating" factors, and (3) "aggravating" factors. Principal factors are

> (1) the existence or absence of a public agency's bad faith; (2) the economic loss to the party requesting the documents; (3) the public importance of the underlying issues to which the request relates, and whether "the significance of the issue to which the request is related was foreseeable to the agency"; and (4) the degree to which the penalty is an "adequate incentive to induce further compliance."

*West*, 168 Wn. App. at 189 (quoting *Yousoufian* II, 168 Wn.2d at 460-63).

> [M]itigating factors that may serve to decrease the penalty are (1) a lack of clarity in the PRA request; (2) the agency's prompt response or legitimate follow-up inquiry for clarification; (3) the agency's good faith, honest, timely, and strict

25

41897-5-II

compliance with all PRA procedural requirements and exceptions; (4) proper training and supervision of the agency's personnel; (5) the reasonableness of any explanation for noncompliance by the agency; (6) the helpfulness of the agency to the requestor; and (7) the existence of agency systems to track and retrieve public records.

. . . [A]ggravating factors that may support increasing the penalty are (1) a delayed response by the agency, especially in circumstances making time of the essence; (2) lack of strict compliance by the agency with all the PRA procedural requirements and exceptions; (3) lack of proper training and supervision of the agency's personnel; (4) unreasonableness of any explanation for noncompliance by the agency; (5) negligent, reckless, wanton, bad faith, or intentional noncompliance with the PRA by the agency; (6) agency dishonesty; (7) the public importance of the issue to which the request is related, where the importance was foreseeable to the agency; (8) any actual personal economic loss to the requestor resulting from the agency's misconduct, where the loss was foreseeable to the agency; and (9) a penalty amount necessary to deter future misconduct by the agency considering the size of the agency and the facts of the case.

*Yousoufian* II, 168 Wn.2d at 467-68 (footnotes omitted).

RCW 42.56.520 requires agencies to respond "[w]ithin five business days of receiving a public record request." An agency's failure to comply with the response requirements may serve as both an aggravating factor in determining the amount of the daily penalty and a consideration when calculating the penalty period. *West*, 168 Wn. App. at 191-92 (upholding trial court's use of delayed response to calculate penalty period and also as aggravating factor). Because the amount of any penalty is within the trial court's discretion, we do not rule on appeal about the delay for the purpose of an aggravating factor; we leave that for the trial court. But we determine the penalty period de novo. *Double H*, 166 Wn. App. at 712-13.

"[T]he PRA requires the agency to pay a penalty for each day the requester is unable to inspect or copy a nonexempt record" and the penalty period includes the amount of time that any suit relating to production of the records was pending. *Sanders*, 169 Wn.2d at 863-64. Here, Licensing received Gronquist's PRA request on July 21, 2009, but it failed to respond until July 31, 2009. This was a total of eight business days after Licensing received Gronquist's request.

26

Because Licensing should have responded to Gronquist's request within five business days, Licensing should have responded by July 28, 2009. RCW 42.56.520. Thus, the trial court should use July 28, 2009, as the starting date when determining any penalty period.

Gronquist also argues that Licensing's failure to provide an explanation for the redactions violated the PRA and entitles him to penalties. Licensing responds that the trial court did not abuse its discretion in failing to award penalties because (1) Licensing eventually provided an explanation and (2) the information was not wrongfully withheld; thus, Gronquist is not entitled to penalties because *Sanders* does not authorize freestanding penalties for failure to properly respond to a PRA request.

Licensing is correct that "the penalty section [of the PRA] does not expressly authorize a freestanding penalty for the failure to provide a brief explanation." *Sanders*, 169 Wn.2d at 860. But "although the PRA does not expressly sanction a *separate* penalty for a brief explanation violation, the violation may *aggravate* the penalty for wrongfully withholding a record." *Sanders*, 169 Wn.2d at 860-61. Moreover, failure to provide an explanation is "silent withholding," which occurs when "an agency . . . retain[s] a record or portion without providing the required link to a specific exemption, and without providing the required explanation of how the exemption applies to the specific record withheld." *PAWS*, 125 Wn.2d at 270.

Licensing did not attempt to explain its redactions until after Gronquist sued Licensing under the PRA. The purpose of the penalty provision in the PRA is to "'discourage improper denial of access to public records.'" *Yousoufian v. Office of King County Executive*, 152 Wn.2d 421, 429-30, 98 P.3d 463 (2004) (*Yousoufian* I) (quoting *Hearst Corp. v. Hoppe*, 90 Wn.2d 123,

140, 580 P.2d 246 (1978).[16] Under these circumstances, on remand the trial court may review all the evidence, the timing of the response and lack of explanation of the redactions, to determine if there was an "'improper denial of access to public records'" based on violation of the requirements to timely and thoroughly reply to Gronquist's PRA request. *Yousoufian I*, 152 Wn.2d at 429-30 (quoting *Hoppe*, 90 Wn.2d at 140).

The PRA authorizes penalties for "each day the requester is unable to inspect or copy a nonexempt record." *Sanders*, 169 Wn.2d at 864. Here, although the redacted information may have been "nonexempt" at the time of Gronquist's PRA request, the information is now exempt from disclosure under RCW 19.02.115. Gronquist will not now be able to "inspect" the record, thus, the penalty period, if any, ends no later than July 1, 2011, the date RCW 19.02.115 became effective and the date the information became exempt from disclosure. LAWS OF 2011, ch. 298, § 43.

III.    MOTION TO SETTLE THE RECORD

Gronquist next argues that the trial court erred when it denied his motion to settle the record. We agree.

On two occasions, Gronquist mailed deposition transcripts to the trial court clerk in support of his show cause motion, his motion for sanctions, and his summary judgment motion. He claimed that the depositions contained information important to his case because they revealed that Licensing did not know why the redacted information was exempt.

The first time Gronquist attempted to file the depositions, the trial court clerk returned the transcripts to Gronquist, and on the second occasion, the clerk refused to file them but

---

[16] Our Supreme Court in *Yousoufian* I discussed former RCW 42.17.340(4) in the PDA, which was recodified as RCW 42.56.550(4) in the PRA, effective July 1, 2006. LAWS OF 2005, ch. 274, § 103. Because the language is identical, we refer to the current PRA.

transferred them to the trial court judge, who apparently did not accept them for filing since they were not part of the trial court record that Gronquist asked that we review. At our direction, Gronquist made a third request that the trial court file the deposition transcripts, but the court again refused his request.

In refusing to file the depositions, the trial court clerk told Gronquist that under CR 32(a), "You may, at the time of your hearing, request the judge to publish the deposition. If the judge grants your request, the deposition will be filed into the court file. It cannot, however, be filed until such time." CP at 218. CR 32(a) provides in relevant part:

> **Use of Depositions.** At the trial or upon the hearing of a motion or an interlocutory proceeding, any part or all of a deposition, so far as admissible under the Rules of Evidence applied as though the witness were then present and testifying, may be used against any party who was present or represented at the taking of the deposition or who had reasonable notice thereof, in accordance with [certain] provisions.

After Gronquist filed his appeal and asked that we review the deposition transcripts, we directed Gronquist to seek relief in the trial court so they became part of the trial court's file for our review. Gronquist complied, but the trial court denied his motion to settle the record, stating, "[T]he plaintiff did not make deposition transcripts part of the record so the depositions were not considered by the court." CP at 221.

Gronquist argues that no authority supports the trial court's interpretation of CR 32(a) to require that Gronquist "publish[ ]" the depositions. We recognize that RCW 2.32.050(4) requires the superior court clerk to "file all papers delivered to him or her . . . in any action or proceeding in the court as directed by court rule or statute." And although under CR 5(i), depositions are generally not to be filed with the trial court, they may be filed "for use in a proceeding or trial or on order of the court." Tegland has clarified the effect of CR 5(i): "The

rule eliminates any notion of 'publishing' a deposition and . . . contemplate[s] that when a deposition is filed, the clerk will simply place it in the same public file containing the pleadings and related documents." 15A KARL B. TEGLAND & DOUGLAS J. ENDE, WASHINGTON PRACTICE: HANDBOOK ON CIVIL PROCEDURE ch. 2, author's cmts. § 46.3, at 417 (2012-13).

Tegland also notes that in the Washington State Bar Association's (WSBA) comments to changes in the civil rules eliminating the "publishing" requirement, the WSBA stated that "portions of the [deposition] transcript can be filed in support of a motion at any time." 15A Tegland, § 46.3, at 417 (internal quotation marks omitted). Thus, we hold that the trial court erred by refusing to file Gronqust's depositions.

Although the trial court erred by failing to allow Gronquist to file the depositions, the depositions are unnecessary for our review. Determining whether the exemptions applied to the redacted information is a matter of statutory interpretation. And there were no disputed facts regarding Licensing's explanations for the redactions; thus, we are required only to determine as a matter of law whether those explanations were adequate. Finally, although there was a disputed factual issue regarding the date Licensing received Gronquist's PRA request, that issue was resolved by the record already before us.

But we order the trial court to file the depositions for two reasons. First, Gronquist alleges that the transcripts contain evidence that Licensing admitted that there is no statute that specifically exempts information contained in the application from public disclosure. Because we remand to the trial court for consideration of penalties, the trial court must have the filed depositions to address Gronquist's claim that Licensing did not redact the application in good

faith. Second, we direct the trial court to file the depositions Gronquist has attempted to file to provide a proper record should this matter require further review.[17]

IV.  COSTS

Gronquist also requests "the award of costs incurred on appeal" in the last line of his brief. Br. of Appellant at 36. This is an inadequate request for expenses.

To receive an award of costs and attorney fees on appeal, a party must devote a section of its opening brief to the request. RAP 18.1(b). *Phillips Bldg. Co. v. An*, 81 Wn. App. 696, 704–05, 915 P.2d 1146 (1996). The court rule requires "more than a bald request for attorney [expenses] on appeal." *Phillips Bldg. Co.*, 81 Wn.App. at 705. The party seeking costs and attorney expenses must provide argument and citation to authority to establish that such awards are warranted. *Phillips Bldg. Co.*, 81 Wn.App. at 705. Gronquist has not done so, and we deny his request for costs and attorney fees on appeal.

To summarize, we do not require Revenue, the agency now responsible for the application at issue here, to produce the redacted information to Gronquist on remand because Revenue is prohibited from doing so by RCW 19.02.115.

We remand this matter to the trial court to determine whether an award of costs and penalties to Gronquist is appropriate, and the amount thereof, based on our holdings that Licensing: (1) failed to timely respond to Gronquist's record request; (2) asserted exemptions for many of the redactions, which exemptions we hold did not apply; (3) withheld numerous portions of the requested application without providing any

---

[17] Gronquist also argues that the trial court's failure to consider the evidence in his depositions and other evidence he submitted with his show cause motion was error and demonstrates that the trial court was "biased." Br. of Appellant at 20. He asks us to "remand the case back for a full and fair hearing before a different judge." Br. of Appellant at 20. But the trial court judge is now retired. Thus, Gronquist's case will presumptively be heard by a different judge on remand.

explanation for its redactions until after Gronquist filed his PRA claim; and (4) the 2009 redactions are in accord with the exemptions in effect beginning July 1, 2011 under RCW 19.02.115.

We further hold that the trial court erred when it refused to file deposition transcripts that Gronquist asserts support his cost and penalties claims against Licensing. We remand this matter to the trial court and direct it to file the deposition transcripts Gronquist attempted to file in 2010 and again in 2011 at our direction. The deposition transcripts will then be available for the trial court's consideration in determining whether an assessment of costs and penalties against Licensing is warranted and the amount of the costs and penalties, if imposed.

_VanDeren, J._
VAN DEREN, J.

I concur:

_Worswick, C.J._
WORSWICK, C.J.

41897-5-II

QUINN-BRINTNALL, J. (concurring in the result) — While I concur with my colleagues in believing that the Department of Licensing (Licensing) failed to respond to Derek Gronquist's request within the Public Record Act's (PRA) statutory timeframe or provide timely and adequate explanations for the redactions it made from the requested records, some of the information in the requested master business license application should have been exempt from disclosure. Accordingly, I concur only in the result.

The PRA provides that "[i]nformation required of any taxpayer in connection with the assessment or collection of any tax" is exempt from public disclosure "if the disclosure of the information to other persons would: (a) Be prohibited to such persons by . . . [RCW] 82.32.330."[18] RCW 82.32.330(2) provides that "[r]eturns and tax information are confidential and privileged." Under RCW 82.32.330(1)(c)(ii), "tax information" includes "the nature, source, or amount of the taxpayer's income, payments, receipts, deductions exemptions, credits, assets, liabilities, net worth, tax liability deficiencies . . . or tax payments, whether taken from the taxpayer's books and records or any other source."

Gronquist contends, and the majority agrees, that this exemption is not applicable to information in a master business license application because such applications "have no connection with the assessment or collection of taxes." Br. of Appellant at 27. The majority cites *Ford Motor Co. v. City of Seattle, Exec. Services Dep't*, 160 Wn.2d 32, 156 P.3d 185 (2007) for the proposition that "business license applications are not a substitute for tax returns" and, accordingly, because "the information contained in the application was not 'required . . . in connection with the assessment or collection of any tax.'" Licensing failed to prove that the

---

[18] RCW 42.56.230(4).

33

information it redacted under RCW 82.32.330 was exempt from disclosure. Majority at 17 (quoting *Ford*, 160 Wn.2d at 56 and RCW 42.56.230(4)). This overextends the *Ford Motor Co.* decision and misconstrues the importance of filing a business license application for purposes of taxation.

In the *Ford Motor Co.* case, the defendant asked the court to treat its business license application as a proper tax return, thereby triggering a statute of limitations defense to requiring payment of unpaid back taxes the city of Tacoma wished to collect. 160 Wn.2d at 55-56. Our Supreme Court rejected this invitation, reasoning that a business license application is "designed to license a company to engage in business, not to provide financial information for taxation purposes." 160 Wn.2d at 56. In the context of the *Ford Motor Co.* case—a situation where a defendant has registered with the Department of Revenue (DOR) for purposes of business and occupation (B&O) taxation but has failed to file appropriate tax returns—this makes sense. A proper tax return is necessary to calculate B&O taxation as that tax "is measured by the application of rates against value of products, gross proceeds of sales, or gross income of the business, as the case may be." RCW 82.04.220(1).[19]

But, while business license applications are not a substitute for appropriately filed tax returns, registering such an application puts the appropriate taxation authority *on notice* that B&O tax will be due. *See, e.g., In re Disciplinary Proceeding Against Cramer*, 168 Wn.2d 220, 226, 225 P.3d 881 (2010) (because "registering a new business with DOR is required by law" DOR has agents "charged with locating unregistered business entities"). The *Ford Motor Co.* decision itself recognizes this distinction:

---

[19] In Seattle, for instance, the B&O tax is currently calculated for both retailers and retail service providers as being equal to the annual "gross proceeds of such sales of the business . . . multiplied by the rate of .00215." SEATTLE MUNICIPAL CODE 5.45.050(C).

> [E]ven if the license applications could be considered returns, Ford failed to file them until 2000. Had Ford filed them in the years they were due, Tacoma might have known to request tax returns and payment of taxes at that time. However, *Ford failed to provide such notice of its business activities in a timely manner.* Its belated filing of license applications cannot now be used to avoid paying its fair share of the [B&O] tax burden to Tacoma.

*Ford Motor Co.*, 160 Wn.2d at 56 (emphasis added). Accordingly, contrary to Gronquist and the majority's assertions, the business license application plays an essential function in the assessment and collection of B&O taxes.

Because a master business license application includes information required "in connection with the assessment or collection of any tax," RCW 42.56.230, the exemption for tax information under RCW 82.32.330 should be applicable. In result, whether the business owner purchased or leased any fixtures (viewed either as "assets" or "payments") and whether the owner bought, leased, or acquired all or part of an existing business (again viewed as "assets" or "payments") should have been redacted as required by as required by RCW 82.32.330. For that reason, I concur only in the result.

QUINN-BRINTNALL, J.